# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, | ) ) ) ) | Case No. 1:18-cv-00289-ILG-ST |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND STAY** |
| Jules Parisien, M.D. et al., | ) ) | |
| Defendants. | ) | |

## **TABLE OF CONTENTS**

I.  STATEMENT OF RECENT FACTUAL DEVELOPMENTS.................................................2

II. ARGUMENT ........................................................................................................4

    A.  DEFENDANTS DO NOT DISPUTE THAT THE PENDING ARBITRATIONS
        SHOULD BE STAYED. ..................................................................................4

    B.  DEFENDANTS' PENDING STATE COURT LITIGATION SHOULD BE
        STAYED.........................................................................................................5

        1.  This Court Has Authority to Stay Pending Litigation to Aid Its Jurisdiction...............5

        2.  Claims Filed After this Lawsuit Are Compulsory Counterclaims That Should
            Have Been Brought In These Proceedings. .................................................8

    C.  DEFENDANTS SHOULD BE ENJOINED FROM COMMENCING NEW
        ARBITRATIONS OR STATE COURT PROCEEDINGS. ................................9

        1.  State Farm Mutual and State Farm Fire Will Suffer Irreparable Harm if Future
            Arbitrations and Lawsuits Are Not Enjoined................................................10

        2.  State Farm Mutual And State Farm Fire Have Demonstrated Serious
            Questions Going To The Merits. .................................................................11

        3.  Defendants Have Not Identified Any Hardship and a Balance of Hardships
            Favors Granting the Stay. ..........................................................................12

        4.  Claims In Future Suits or Arbitrations Are Compulsory Counterclaims That
            Should Be Brought In These Proceedings. .................................................14

III. CONCLUSION....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aeroquip Corp. v. Chunn,*
   526 F. Supp. 1259 (M.D. Ala. 1981) ....................................................................14

*Allstate Ins. Co. v. Elzanaty,*
   929 F. Supp. 2d 199 (E.D.N.Y. 2013) ............................................4, 5, 10, 13, 15

*Allstate Ins. Co. v. Harvey Family Chiropractic,*
   677 F. App'x 716 (2d Cir. 2017) ..........................................................................10

*Bruce v. Martin,*
   680 F. Supp. 616 (S.D.N.Y. 1988)................................................8, 10, 12, 14, 15

*Liberty Mut. Ins. Co. v. Excel Imaging, P.C.,*
   879 F. Supp. 2d 243 (E.D.N.Y. 2012) ..................................................................15

*Noel E. Blackman v. State Farm Mut. Auto. Ins. Co.,*
   Index No. 714617/16, Civil .....................................................................................4

*Red Earth LLC v. U.S.,*
   657 F.3d 138 (2d Cir. 2011)...................................................................................11

*Reines Distributors, Inc v. Admiral Corp.,*
   182 F. Supp. 226 (S.D.N.Y. 1960).........................................................................14

*S. Constr. Co, Inc. v. Pickard,*
   371 U.S. 57 (1962).................................................................................................14

*State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C., et al.,*
   Case No. 1:16-cv-04948-FB-SMG (E.D.N.Y. 2017) ....................................7, 8, 13

*Vendo Co. v. Lektro-Vend Corp.,*
   433 U.S. 623 (1977)..............................................................................................6, 7

*Wyly v. Weiss,*
   697 F.3d 131 (2d Cir. 2012)..................................................................................5, 6

**Statutes**

18 U.S.C. §§ 1961 *et seq*...................................................................................2, 10

28 U.S.C. § 2283.........................................................................4, 5, 7, 9, 10

Ins. Law § 5106...................................................................................................15

**Rules**

CPLR § 3211(a)(4) ..........................................................................................................3

Fed. R. Civ. P. 13(a) ...............................................................................................8, 9, 14

Fed. R. Evid. 408 ......................................................................................................3, 12

Plaintiffs State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Fire and Casualty Company ("State Farm Fire") respectfully submit this reply in support of their Motion For Preliminary Injunction and Stay ("Motion"), seeking to enjoin Defendants from pursuing claims in other forums while those identical claims are at issue here. Defendants' actions since this litigation commenced only underscore how vital it is to prevent Defendants from undermining the authority of this Court and using thousands of individual state court lawsuits to advance their fraud. Since January, Defendants have filed over 830 additional state court lawsuits and two additional arbitrations, bringing the total pending litigation to over 2,300 lawsuits and 20 pending arbitrations. *See* Exs. 1 & 2.

In their Opposition, the Professional Defendants and the DME Defendants[1] misstate facts and law in an effort to continue their fraudulent billing and litigation scheme. Existing precedent already provides this Court with clear authority to grant the requested injunction, but the unique circumstances presented by Defendants' conduct necessitate Court intervention. This action involves a scheme in which Defendants, operating out of a multi-disciplinary clinic, subject patients who have been in automobile accidents to a predetermined protocol of fraudulent unnecessary medical care by numerous providers. *See, e.g.*, Compl. ¶¶ 2-3, 5, 74-233. The fraudulent scheme involves the submission of bills in isolation, and when State Farm attempts to obtain more information about those bills and/or denies bills, Defendants then bring individual suits and arbitrations against State Farm. While it can be challenging to see the fraudulent nature of a single bill for a single date of service in isolation, when the bills of providers are viewed together, the scheme becomes more apparent. Compl. ¶ 241. One of the goals of Defendants'

---

[1] Only two defendants, (1) Quality Custom Medical Supply, Inc. ("Quality Custom") and (2) Noel Blackman, M.D. ("Blackman"), have not joined in the Professional Defendants and the DME Defendants' Opposition to the Motion. Both Quality Custom and Blackman agreed and were ordered to respond to the Motion, if at all, by March 15, 2018, and declined to do so. *See* Dkts. 45 & 50.

tactics is to prevent a collective consideration of patterns in treatment and to unreasonably burden Plaintiffs, the courts, and arbitrators with thousands of suits in the hopes that overloading them will result in capitulation.

This largescale fraud and RICO action is the best means in which to test whether the Defendants' treatment and bills were legitimate or part of a fraudulent predetermined treatment protocol. State Farm Mutual and State Farm Fire and their insureds will incur irreparable harm if Defendants are permitted to deplete their limited insurance benefits by adjudicating the claims at issue in thousands of separate actions. The state courts of New York have invited this Court to act by entering orders staying several of Defendants' cases pending a ruling on the instant motion. Protecting the authority of this Court, and preventing the irreparable harm that all parties face if forced to litigate these claims in thousands of state courts and arbitrations, requires entry of the requested injunction.

## I.   STATEMENT OF RECENT FACTUAL DEVELOPMENTS

Defendants' Opposition inaccurately describes the factual and procedural history. Defendants have filed thousands of state court lawsuits, have recently filed hundreds of lawsuits that should have been brought as compulsory counterclaims to this action, and have violated the clear and explicit terms of a negotiated tolling agreement.

On or about August 16, 2017, State Farm Mutual and State Farm Fire and Defendants, as part of an effort to resolve their disputes through settlement, entered into a Tolling and Forbearance Agreement ("Tolling Agreement"). The Tolling Agreement tolled applicable time limitations periods and sought to hold in abeyance, to the extent possible, pending lawsuits and

arbitrations while settlement discussions took place, and included an integration clause.  Ex. 3 ¶ 7.  All parties were represented by counsel.[2]

On January 5, 2018, Defendants sent notice of their decision to terminate the Tolling Agreement.  The agreement was structured to allow State Farm Mutual and State Farm Fire to file their federal action before Defendants could file any actions.  State Farm Mutual and State Farm Fire could file on January 16, 2018.  Ex. 3 ¶ 4.  Defendants could file on January 20, 2018. *Id.*  Nevertheless, Defendants, represented by the Rybak firm, filed 98 lawsuits against State Farm in Civil Court, Kings County on or about January 11, 2018 and 734 lawsuits on or about January 19, 2018.  Defendants' violation of the Tolling Agreement was no doubt motivated at least in part to avoid a New York State Court rule, CPLR § 3211(a)(4), that would have required dismissal of actions when an identical action is pending in another court.

At this point, there are over 2,300 pending lawsuits and 20 pending arbitrations brought by Defendants.  738 of the state court suits and 2 of the arbitrations were filed after this federal action.  Given these numbers and Defendants' recent conduct, it is highly likely that additional suits will be filed in the future.

Since termination of the Tolling Agreement, some counsel for State Farm have requested stays and/or adjournments pending this Court's decision on the Motion.  Multiple state courts

_____

[2] Defendants' Opposition and supporting affidavit of one of the attorneys who personally signed the Tolling Agreement imply they were misled by State Farm into believing State Farm would never seek to stay state court lawsuits, but rather if an agreement was not reached they "would be able to go forward with their claims for payment."  Opp. at 27.  There are several problems with Defendants' claim.  First, it is untrue — at no point did State Farm or its counsel ever discuss what it would do regarding pending suits and arbitrations with Defendants, let alone make representations about it.  Second, even if it did, the Tolling Agreement contains an integration clause and does not on its face include any such promise or representation.  Ex. 3 ¶ 7.  Third, even if State Farm had said such things and they were not subsumed in an executed written document, they would be part of settlement discussions governed by Federal Rule of Evidence 408.  The agreement explicitly provides that exchanges during settlement discussions "shall not be used for any other purpose if the Parties are unable to reach an agreement."  Ex. 3 ¶ 1.  Thus, substantive reference to them here is improper.

have now issued orders staying their actions or have informally adjourned hearings until this Court rules. For example, in *Noel E. Blackman v. State Farm Mut. Auto. Ins. Co.*, Index No. 714617/16, Civil Court of the City of New York, County of Kings, Judge Kennedy granted State Farm Mutual's application for stay "until the federal judge in the case of *State Farm Mut. Automobile Ins. Co. re Noel Blackman M.D. et al.*, Docket# 18-CV-00289 (E.D.N.Y.) decides State Farm's application in that matter for a preliminary injunction." Ex. 4.

## II.   ARGUMENT

Particularly given the unique circumstances of this case — the significant number of pending state court actions, their overlap with these proceedings, and Defendants' use of separate actions to injure State Farm Mutual and State Farm Fire and further the alleged fraudulent scheme — this Court should grant the injunctive relief requested.

### A.    DEFENDANTS DO NOT DISPUTE THAT THE PENDING ARBITRATIONS SHOULD BE STAYED.

Defendants do not dispute in their Opposition, nor could they, that this Court can and should enter an order staying pending arbitrations during this lawsuit. *See Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (federal courts have the "power to temporarily stay a pending private arbitration").[3]  The Professional Defendants and DME Defendants simply note that they have no pending arbitrations against Plaintiffs. Rather, all arbitrations filed against State Farm Mutual and State Farm Fire (now totaling 20) have been filed by defendant Quality Custom Medical Supply, Inc. ("Quality Custom"). *See* Dkt. 7-1 (showing 18 pending arbitrations filed before this litigation); *see* Ex. 1 (showing 2 additional arbitrations filed since institution of this action). Quality Custom has not responded to the

---

[3] The Anti-Injunction ("AIA") Act does not prevent federal district courts from issuing injunctions against the institution of arbitrations or staying pending arbitrations, which are not "proceedings in a state court" that implicate the AIA. *See* 28 U.S.C. § 2283.

Motion.  *See* Dkt. 45 (Court setting March 15, 2018 response date by stipulation).  Having waived their opportunity to respond, and given that the pending arbitrations and this action involve resolution of the same claims, this Court should grant the Motion and temporarily stay all arbitrations pending between State Farm Mutual and/or State Farm Fire and Defendants seeking No-Fault insurance benefits related to services or supplies provided by Defendants. *Elzanaty*, 929 F. Supp. 2d at 220 (stay of pending arbitrations "is the most appropriate solution . . . to avoid the large volume of arbitrations and inconsistent judgments" that would otherwise "culminat[e] in a procedural and substantive train wreck").

## B.   DEFENDANTS' PENDING STATE COURT LITIGATION SHOULD BE STAYED.

### 1.   This Court Has Authority to Stay Pending Litigation to Aid Its Jurisdiction.

The Anti-Injunction Act ("AIA") expressly allows a federal court to stay pending proceedings "where necessary in aid of its jurisdiction."  28 U.S.C. § 2283.  Defendants claim that the "necessary to aid jurisdiction" exception is inapplicable here because "the ***general*** rule has been" that injunctions are not issued to restrain *in personam* litigation.  *See* Opp. at 13; *see also id.* at 14 ("The exception is *generally* reserved for state court actions *in rem*") (emphases added).  But this situation does not present the "general" issues courts have addressed when performing an AIA analysis, and even the case law cited by Defendants readily acknowledges that "an *in personam* injunction may be appropriate" under certain circumstances.  *Wyly v. Weiss*, 697 F.3d 131, 138 (2d Cir. 2012) (cited in Opp. at 14).  Indeed, State Farm Mutual and State Farm Fire are aware of no court opinion addressing a scheme of coordinated state court litigation remotely approaching the magnitude presented here.  No court has yet considered the effects of parties being forced to litigate over 2,300 related lawsuits in state courts when the same issues could be resolved in a single federal proceeding.  And the very nature of

Defendants' fraud scheme renders it uniquely unjust to be litigated on a claim-by-claim basis. Defendants argue that there is nothing "improper about bringing a proceeding 'over a single provider's bill for a single date of service.'" Opp. at 2. But Defendants' scheme involves inundating Plaintiffs with bills for individual dates of service, presenting them in isolation to make it challenging to see and demonstrate patterns of fraudulent treatment, and burdening the insurers, the courts, and arbitrators with the costs and efforts of litigating individual proceedings. Where the tactics are so egregious and serve to undermine the Court's authority to resolve the dispute before it, the "necessary in aid of jurisdiction" standard is appropriately satisfied. Moreover, a number of the state courts in which actions are now pending have issued stays or informal adjournments pending this Court's ruling on the Motion, essentially inviting this Court to act. *E.g.*, Ex. 4 (granting State Farm Mutual's application for stay "until the federal judge in [this case] decides State Farm's application in that matter for a preliminary injunction.").

Furthermore, the case law Defendants rely on is inapposite and readily distinguishable. In *Wyly v. Weiss*, while noting that "an *in personam* injunction may be appropriate" in certain circumstances, the Second Circuit found an injunction was not appropriate "in aid of" the court's jurisdiction because "there [wa]s no overlap between the federal and state court claims or defendants." 697 F.3d at 139. By contrast, here, the state lawsuits State Farm Mutual and State Farm Fire seek to enjoin involve the same claims and same Defendants as this federal action. In *Vendo Co. v. Lektro-Vend Corp.*, a vending machine corporation recovered judgment in state court against the controlling shareholder of another company for violation of an anti-competition agreement. 433 U.S. 623 (1977). The Northern District of Illinois had issued an injunction against enforcement of the state court judgment. The Supreme Court noted that the "necessary in aid of its jurisdiction" exception had not yet been used to grant an injunction only meant to

preserve a case or controversy.  433 U.S. at 642.  Whereas *Vendo* involved the stay of a single state court judgment, only meant to preserve a case or controversy for the federal court, here Defendants have filed thousands of state lawsuits that seek to threaten the administration of justice and this Court's jurisdiction.  And the harm to be avoided here goes far beyond merely preserving a case or controversy; absent the requested stay, Plaintiffs will suffer irreparable harm through expensive, time-consuming piecemeal litigation of thousands of claims with the danger of inconsistent and unjust results, when those same issues can be resolved in one forum.

Defendants' efforts to distinguish *Jamaica Wellness*, a decision in this District that is squarely on point, also fail.  Staying Defendants' pending state court litigation would "certainly aid the jurisdiction of [the] court, resolve the matters, avoid fragmentation, [and] avoid multiplicity of litigation which could result in disparate determinations."  *See State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C., et al.*, Case No. 1:16-cv-04948-FB-SMG (E.D.N.Y. 2017), 5/18/2017 Hrg. Tr. at 12:3-10, Dkt. 7-5; *see also* Dkt. 7-6 at 9.  First, Defendants claim *Jamaica Wellness* is distinguishable because it involved a different exception to the AIA — for the Court to "effectuate its judgment" — rather than the one relied upon here. Opp. at 15.  But while this additional exception was discussed in *Jamaica Wellness*, the Court based its ruling on the same exception sought here, finding that a stay of the state court actions was appropriate under the "exception to the Anti-Injunction Act where necessary to aid the jurisdiction of the Court":

> [A]ll of the issues I hear would certainly aid the jurisdiction of court, resolve the matters, avoid fragmentation, [and] avoid multiplicity of litigation which could result in disparate determinations.

*See* Dkt. 7-5 at 12:3-7.  Second, Defendants attempt to distinguish *Jamaica Wellness* by noting that the provider-defendants had already filed a counter-claim against State Farm and that one

defendant had defaulted.  Opp. at 15-16.  But those factors are irrelevant to this analysis, and Judge Block's oral ruling does not turn on those facts; to the contrary, Judge Block explicitly *disregarded* the defendants who had defaulted in his analysis.  Dkt. 7-5 at 10:6-12 ("We are not dealing with [the others who have defaulted]").  Finally, Defendants seek to distinguish *Jamaica Wellness* by suggesting that Judge Block improperly relied on *Bruce v. Martin*.  Not so.  Judge Block correctly relied on *Bruce v. Martin* for the proposition that a federal court could "enjoin fragmented state actions so that the federal court could give full and final and complete relief." Dkt. 7-5 at 12:15-20.  That is precisely what the Southern District in *Bruce v. Martin* held.  680 F. Supp. 616, 622 (S.D.N.Y. 1988) ("A court of equity may grant an injunction to avoid multiple actions at law . . . so that the decisions in one action will be determinative of all.").

Judge Block's ruling relied repeatedly on the necessity of avoiding the "multiplicity of litigation" that would result in "irreparable harm . . . if I don't grant a preliminary injunction." Dkt. 7-5 at 17:15-21; 18-1-3; 18:7-13; 18:22-23; *see also id.* at 18:24-19:2 ("It certainly is not in the best interest for the administration of justice.  The preliminary injunction is granted.").  The same reasoning Judge Block employed in *Jamaica Wellness* applies here, but with even more force.  With over 2,300 lawsuits now pending, an injunction staying those lawsuits until this action is resolved is absolutely necessary to aid the jurisdiction of this Court, prevent fragmented results, and avoid a massive drain of judicial resources for all parties involved.

## 2. Claims Filed After this Lawsuit Are Compulsory Counterclaims That Should Have Been Brought In These Proceedings.

Defendants have recently filed over 830 new lawsuits now pending in New York state courts.  As discussed above, the vast majority of these suits were filed in violation of the parties' Tolling Agreement.  Furthermore, all suits initiated after this suit was filed on January 16 should have been brought as compulsory counterclaims in these proceedings under Federal Rule of Civil

Procedure 13(a), and are yet another example of Defendants' attempts to undermine this Court's jurisdiction. *See also infra* Part II.C.4 (future compulsory counterclaims should be enjoined). The suits "arise[] out of the transaction or occurrence that is the subject matter" of the claims at issue here, and so are compulsory counterclaims to this action. Fed. R. Civ. P. 13(a).

For the reasons discussed in the Motion and below, State Farm Mutual and State Farm Fire will suffer irreparable harm if this Court does not temporarily stay the pending state court litigation. *See* Mot. Part III.A.1; *infra* Part II.C.1. State Farm Mutual and State Farm Fire have shown sufficiently serious questions going to the merits with a balance of hardships tipping decidedly in their favor. *See* Mot. Part III.A.2; *infra* Parts II.C.2–3; *see also* Dkt. 7-5 at 14:5-9 (defendants were not prejudiced by injunction because all claims could be brought before the court as compulsory counterclaims). This Court should stay all pending state court litigation between Defendants and State Farm Mutual and State Farm Fire during the pendency of this lawsuit, including but not limited to the lawsuits identified on Exhibit 2 to the Motion (Dkt. 7-2), Exhibits D and E to Defendants' Opposition (Dkts. 52-4 & 52-6), and Exhibit 2 to this Reply.

## C.    DEFENDANTS SHOULD BE ENJOINED FROM COMMENCING NEW ARBITRATIONS OR STATE COURT PROCEEDINGS.

In the Motion, State Farm Mutual and State Farm Fire predicted that "[g]iven the Defendants' history and pattern of filing litigation over unpaid and denied bills, it is expected that, absent an injunction, Defendants" would pursue hundreds of additional arbitrations and/or state court litigation on claims at issue in this case in an attempt to thwart this Court's jurisdiction over the declaratory judgment claims. Mot. at 15; Dkt. 7-4, 1/18/2018 Aff. of S. McKenna ¶ 8. State Farm's predictions have now proven accurate; Defendants have recently filed over 830 additional state court lawsuits and two additional arbitrations. Exs. 1 & 2. Defendants can properly be enjoined from filing additional actions which, absent an injunction,

would be likely.  Defendants do not dispute in Opposition that the AIA does not prohibit a federal district court from enjoining future lawsuits in state court.  Rather, Defendants argue that Plaintiffs have failed to show irreparable harm and a serious questions going to the merits with a balance of hardships tipping decidedly in their favor.  Defendants' arguments fail.

> **1.     State Farm Mutual and State Farm Fire Will Suffer Irreparable Harm if Future Arbitrations and Lawsuits Are Not Enjoined.**

Courts in the Eastern District of New York have consistently enjoined the filing of future arbitrations and lawsuits in similar circumstances, where future actions filed by providers would seek unpaid bills while a corresponding federal suit for insurance fraud was ongoing. "[A]llowing a large number of proceedings to be heard" in various forums, "each of whom will likely come to their own independent and potentially contradictory conclusions, will result in harm to [State Farm] from which it cannot recover." *Elzanaty*, 929 F. Supp. 2d at 222 (enjoining all pending and future arbitrations brought by defendants).  "If the defendants are permitted to commence separate suits . . . the plaintiffs will be required to assert the same defenses under federal and state law that they have asserted as claims here." *Bruce*, 680 F. Supp. at 622.  State Farm Mutual and State Farm Fire have therefore "satisfied the irreparable injury standard by showing the destructive effect that scores of fragmented state actions on the issues raised here would have on this court's ability to afford the parties full, final and complete relief." *Id.*

Defendants argue that pure "economic injury" cannot fulfill the irreparable harm requirement to issue an injunction.  *See* Opp. at 20-21.  But the potential injury to State Farm Mutual and State Farm Fire is much more than only economic.  Defendants rely on an unpublished Second Circuit opinion which did not even address whether "the District Court had the authority to issue an injunction under the AIA and RICO" because there was no evidence in that case that "the plaintiffs cannot be fully compensated through money damages for the alleged

harm suffered." *Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x. 716, 718 (2d Cir. 2017). Here, Plaintiffs will suffer costs and expenses associated with litigating separate suits and arbitrations, and there will be practical and legal hurdles to recovering those sums and any judgments in those proceedings in this action. Indeed, litigation costs for state suits and arbitrations and amounts paid by State Farm Mutual and State Farm Fire in state court lawsuits and arbitrations are not currently included in Plaintiffs' damage amounts in this case. Moreover, Plaintiffs — not to mention the Court and all involved parties — will suffer other irreparable non-economic harms, including time-consuming, piecemeal litigation on thousands of claims with the dangers of inconsistent results in forums insufficiently suited to address the full scope of Defendants' fraud. And State Farm Mutual and State Farm Fire and their insureds will incur irreparable harm if Defendants are permitted to deplete their limited insurance benefits by having the claims at issue in this case adjudicated in thousands of separate actions. This Court is the best venue capable to assess the fraudulent patterns, adjudicate Defendants' treatment and billing, and prevent the irreparable harm that all parties face if forced to litigate these claims in thousands of state courts and arbitrations.

## 2. State Farm Mutual And State Farm Fire Have Demonstrated Serious Questions Going To The Merits.

To satisfy the second prong of the preliminary injunction standard, State Farm Mutual and State Farm Fire need only show "a serious question going to the merits to make them a fair ground for trial." *See, e.g.*, *Red Earth LLC v. U.S.*, 657 F.3d 138, 143 (2d Cir. 2011). While admitting that this is a "lower standard" than a showing of a *likelihood* of success on the merits (Opp. at 23), Defendants nevertheless attach hundreds of pages of exhibits and spend roughly 10 pages of their Opposition litigating the facts and debating the merits of the Amended Complaint's allegations. *See* Opp. at 3-10; 23-26. Such a debate is wholly inappropriate at this

stage of the litigation.  Defendants concede that "[i]t is impossible in a motion of this nature" to demonstrate that State Farm has failed to meet its burden (Opp. at 24) — and for good reason.  A motion for preliminary injunction is not intended as a vehicle to litigate the merits of a suit before the parties have even had the benefit of discovery.  The Amended Complaint includes almost 100 pages of detailed allegations documenting Defendants' fraudulent treatment and billing scheme, and 26 exhibits illustrating the patterns of the Predetermined Treatment Protocol. Defendants have not moved to dismiss, but have answered the Amended Complaint.  State Farm Mutual and State Farm Fire have easily presented questions that are fair grounds for litigation. *See also Bruce*, 680 F. Supp. at 622-23 (detailed allegations in the complaint regarding defendants fraud scheme showed "sufficiently serious questions going to the merits").

### 3. Defendants Have Not Identified Any Hardship and a Balance of Hardships Favors Granting the Stay.

Defendants do not, and cannot, articulate any hardship they will suffer from the requested stay.  They will still have an opportunity to have their claims resolved.  If anything, their own costs will likely be reduced through having issues addressed in a consolidated forum.  Rather than assert hardship, Defendants make an equity argument based on the false assertion that they were somehow misled in connection with the Tolling Agreement.  They claim they were deceived into believing that State Farm Mutual and State Farm Fire would not file this federal action, and would not seek to stay state court actions.  Opp. at 26-27.  The claim fails for a number of reasons.  *First*, the "conduct or [] statement[s] made during compromise negotiations" are inadmissible on behalf of any party.  Fed. R. Evid. 408(a).  The parties agreed that all settlement discussions were conducted pursuant to Rule 408 and would "not be used for any other purpose if the Parties are unable to reach an agreement."  Ex. 3 ¶ 1.  It is improper and in violation of the Tolling Agreement for Defendants to seek a tactical advantage in this litigation

through reference to settlement discussions.  *Second*, at no time were Defendants misled into a "false sense of security" concerning State Farm Mutual and State Farm Fire's intentions to file affirmative litigation should settlement negotiations fail.  State Farm's intentions regarding state suits or arbitrations were never discussed.  As discussed above, the Tolling Agreement on its face was specifically structured to ensure that State Farm Mutual and State Farm Fire could file their federal action in advance of Defendants filing any collection lawsuits or arbitrations.  Ex. 3 ¶ 4.  *Third*, the agreement contained an integration clause, and does not on its face include any promises or representations concerning Plaintiffs' future litigation tactics.  Ex. 3 ¶ 7.

*Finally*, Defendants' false attacks are irrelevant to the issue here: whether a balance of hardships tips decidedly in favor of State Farm Mutual and State Farm Fire.  State Farm Mutual and State Farm Fire have shown that they will be irreparably harmed absent the injunction.  By contrast, "the issuance of a preliminary injunction will not unduly cause hardship to any of the defendants, but, to the contrary, all parties will benefit from having the issue[s]" determined in one action.  *Elzanaty*, 929 F. Supp. 2d at 222.  Defendants claim that a stay would prevent their ability to recover anything due to them under New York's No-Fault Regulations.  Not so.  Defendants can bring their compulsory counterclaims to be heard by this Court.  As the court noted in *Jamaica Wellness*, it was in the best interest of *all* parties to enjoin the state court actions and litigate the issues in one court:

> [The compulsory counterclaims] are the same claims you will have in the state court action[s] I assume.  All of those issues can be brought before me.  As a practical matter, what do you gain by seeking to avoid the preliminary injunction?  [ . . .]  How are you prejudiced?  You can bring all of this forward before me in your compulsory counterclaim.  [. . .]  [T]hat will spare [Defendants] the need to go to 50 different courts.  I don't think it is in your best interest to do that.  It certainly is not in the best interest of the administration of justice.

13

Dkt. 7-5, 13:19-22; 14:5-8; 18:22-19:1; *see also Bruce*, 680 F. Supp. at 622-23 (defendants would not be prejudiced because they could "attempt to collect on the notes by asserting counterclaims in this action").

### 4.    Claims In Future Suits or Arbitrations Are Compulsory Counterclaims That Should Be Brought In These Proceedings.

Finally, any future arbitrations or lawsuits filed by Defendants against State Farm Mutual or State Farm Fire for services provided at 1786 Flatbush Avenue in Brooklyn should be brought as compulsory counterclaims in these proceedings under Federal Rule of Civil Procedure 13(a). Defendants have filed their Answers (Dkts. 31-43, 57)[4] and have failed to raise any of the claims that are the subject of recent state court litigation as counterclaims in this action.  Rule 13(a) was "designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."  *S. Constr. Co, Inc. v. Pickard*, 371 U.S. 57, 60 (1962). Defendants now claim in Opposition that Rule 13(a) cannot be used to restrain even future state court proceedings.  *See* Opp. at 28-29.  Defendants misstate the law and ignore law cited in Plaintiffs' Motion where a federal court enjoined the filing of future state proceedings required to be brought as compulsory counterclaims in the federal action.  Indeed, the only two cases cited by Defendants (one from 1960 and one from an Alabama court in 1981) are irrelevant to this issue, as they both involve whether to stay already existing pending state court actions, not enjoin future compulsory counterclaims.  *Id.* (*citing Reines Distributors, Inc v. Admiral Corp.*, 182 F. Supp. 226, 230 (S.D.N.Y. 1960); *Aeroquip Corp. v. Chunn*, 526 F. Supp. 1259, 1260 (M.D. Ala. 1981)).  And as discussed in the Motion, federal courts, including this one, have recognized that they do have power to enjoin parties from prosecuting future claims that should

---

[4] Only Noel Blackman, M.D. has not yet responded to the Amended Complaint.  His deadline to do so is April 9, 2018.  *See* Dkt. 50.  State Farm Mutual and State Farm Fire are not aware of any recent litigation filed by Dr. Blackman in state court.  *See* Ex. 2.

be brought as compulsory counterclaims in a previously filed suit — in both state and federal

courts.  In *Bruce v. Martin*, the Southern District of New York directly addressed "the issue

whether a federal court may enjoin a party from bringing its compulsory counterclaim in a

subsequent state court action."  680 F. Supp. at 620.  The Court reasoned that commencement of

compulsory counterclaims in state courts could result in irreparable injury:

> Prior rulings by state courts that decline to stay such actions may
> be introduced here to preclude this court from considering a given
> claim or factual issue.  Under such circumstances, the
> commencement of numerous separate actions in state courts will so
> interfere with the proceedings in this court "as to seriously impair
> [this court's] flexibility and authority to decide" this case. [. . .]
> Accordingly, the plaintiffs have satisfied the irreparable injury
> standard by showing the destructive effect that scores of
> fragmented state actions on the issues raised here would have on
> this court's ability to afford the parties full, final and complete
> relief.

*Id.* at 622 (enjoining compulsory counterclaims from being brought in subsequent state court

actions).   Accordingly, this Court should enjoin Defendants from commencing any new

arbitrations[5] or New York state court proceedings against State Farm Mutual and State Farm Fire

seeking to collect No-Fault Benefits.  *See Bruce*, 680 F. Supp. at 620.

## III.   CONCLUSION

For all the foregoing reasons, State Farm Mutual and State Farm Fire respectfully request

that this Court issue an order granting its Motion for Preliminary Injunction and Stay.

---

[5] Defendants' argue that Insurance Law § 5106(b) grants them an absolute right to arbitrate future
disputes should they wish to do so.  Opp. at 12, n.19.  Defendants misstate the statute.  It provides only
that insurers shall provide the option of arbitrating disputes to claimants.  It is silent as to whether courts
may subsequently enjoin future arbitrations pending resolution of litigation on the same issues.  *Cf.* Ins.
Law § 5106.  Numerous courts have exercised their ability to enjoin future arbitrations in similar
situations.  *E.g.*, *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (federal courts
have the "power to . . . temporarily enjoin any future private arbitrations"); *Liberty Mut. Ins. Co. v. Excel
Imaging, P.C.*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012).

Dated:  March 29, 2018
       Chicago, Illinois

KATTEN MUCHIN ROSENMAN LLP


By:  */s/ Jonathan L. Marks*
    Ross O. Silverman (NY Bar No. 4147922)
    Jonathan L. Marks (NY Bar No. 5462874)
    Patrick C. Harrigan (motion for *pro hac vice*
    to be filed)
    Anne Raven (admitted *pro hac vice*)
    Silké G. Watson (admitted *pro hac vice*)
    KATTEN MUCHIN ROSENMAN LLP
    525 West Monroe Street
    Chicago, Illinois 60661-3693
    Telephone:  312.902.5200
    Facsimile:  312.902.1061
    ross.silverman@kattenlaw.com
    jonathan.marks@kattenlaw.com
    patrick.harrigan@kattenlaw.com
    anne.raven@kattenlaw.com
    silke.watson@kattenlaw.com

    Michael M. Rosensaft
    KATTEN MUCHIN ROSENMAN LLP
    575 Madison Avenue
    New York, NY 10022-2585
    Telephone:  212.940.8800
    michael.rosensaft@kattenlaw.com

    *Attorneys for Plaintiffs State Farm Mutual*
    *Automobile Insurance Company and State*
    *Farm Fire and Casualty Company*

<u>**CERTIFICATE OF SERVICE**</u>

I, Jonathan L. Marks, an attorney, hereby certify that on March 29, 2018, I electronically

filed the foregoing paper with the Clerk of Court using the CM/ECF system, which will send

notification to all counsel of record.


By:   <u>*/s/ Jonathan L. Marks*</u>
Jonathan L. Marks
Attorney for Plaintiffs