# Katten
Katten Muchin Rosenman LLP

525 W. Monroe Street
Chicago, IL  60661-3693
312.902.5200 tel
www.kattenlaw.com

**JONATHAN L. MARKS**
jonathan.marks@kattenlaw.com
312.902.5337 direct
312.577.1061 fax

August 1, 2018

**VIA ELECTRONIC FILING**

Magistrate Judge Steven L. Tiscione
United States District Court
225 Cadman Plaza East
Courtroom N504, Chambers Room N503
Brooklyn, NY 11201

      **Re: State Farm Mut. Auto. Ins. Co. et al v. Parisien, M.D. et al., Case No. 1:18-cv-00289-ILG-ST (E.D.N.Y.) – Motion to Compel DME Defendants' Discovery**

Dear Magistrate Judge Tiscione:

      Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company move to compel the DME Defendants[1] to complete production and written responses to Plaintiffs' First Set of Document Requests and to serve complete and verified answers to Plaintiffs' First Set of Interrogatories.

      This action involves a scheme to defraud involving a fraudulently operated medical clinic at 1786 Flatbush in Brooklyn, New York.  The DME Defendants played a crucial role in the fraudulent activity at 1786 Flatbush at issue in this fraud and RICO action.  DME Defendants are a series of interrelated companies purportedly owned by separate individuals, at least some of whom are foreign nationals, which purported to supply durable medical equipment ("DME") to patients at 1786 Flatbush based on prescriptions from the defendant healthcare providers.  Although the DME Defendants utilized separate mailing addresses and tax identification numbers on their bills, they used identical prescription and delivery forms and some were incorporated by the same lawyer.  *See* Am. Compl. (Dkt. 5) ¶¶ 62, 209.  Bank records recently obtained by Plaintiffs through a third-party subpoena also show that DME Defendants paid tens of thousands of dollars to lay person office staff at 1786 Flatbush.[2]  It makes no sense that DME companies, who purport to deliver medical supplies and equipment to patients, would pay clinic employees absent some improper arrangement.

---

[1] The "DME Defendants" include (1) Maiga Products Corporation, (2) Madison Products of USA, Inc., (3) Quality Health Supply Corp. ("Quality Health"), (4) Personal Home Care Products Corp., and (5) AB Quality Health Supply Corp. ("AB Quality Health").

[2] For example, Madison Products of USA, Inc. and Maiga Products Corporation collectively paid over $200,000 to Susan Tuano, a purported office manager of 1786 Flatbush.

Recently subpoenaed records also confirm that the non-party Rybak Law Firm, PLLC, which represented hundreds of patients who treated at 1786 Flatbush, helped establish "virtual offices" for at least two of the DME Defendants, Maiga Products Corporation and Madison Products of USA, Inc., under which those businesses' mail and phone calls were forwarded to the Rybak firm. *See* Ex. 1, 7/6/2012 Maiga Online Virtual Office Agreement at 3 (notarized by Oleg Rybak), & at 5 (directing mail forwarding to "The Rybak Firm, PLLC, 1810 Voorhies Ave"); Ex. 2, 10/30/2013 Madison Online Virtual Office Agreement at 3 (directing mail forwarding to "1810 Voorhies Ave"). In at least one instance, attorney Oleg Rybak appears to have personally signed a check drawn on the business account of Maiga Products paid to its purported owner. Ex. 3, 4/15/2013 Maiga Check to M. Borisevica (signed by Oleg Rybak).

To better understand the relationships between and among the DME Defendants and their role in the scheme, Plaintiffs served their First Set of Document Requests and First Set of Interrogatories to the DME Defendants on April 19, 2018. *See* Ex. 4, 4/19/2018 First Sets of Disc. Reqs. to DME Def's; Ex. 5, 4/19/2018 A. Raven E-mail. The DME Defendants' responses were due on May 21, 2018. *See* Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A).

On May 15, 2018, the DME Defendants filed a Motion for Protective Order/Motion to Quash, seeking to strike written discovery requests seeking "financial discovery." Dkts. 66 & 68. While Defendants did not specify which discovery requests they found objectionable, they referenced bank records and tax returns and presumably challenged requests for "financial" information. No other discovery requests were challenged, and no other issues raised. At a May 25, 2018 hearing, this Court granted Defendants' motion only "with respect to individual tax returns, but denied [Defendants' motion] in all other respects." *See* Dkt. 76.

Plaintiffs have afforded the DME Defendants numerous extensions and professional courtesies over the last two months, yet the DME Defendants have failed to comply with their discovery obligations.

After the time to respond to discovery had expired, Plaintiffs contacted the DME Defendants and offered a two-week extension, until June 1, 2018. Ex. 6, 5/29/2018 E-Mail Thread. The DME Defendants did not agree to the proposed date nor offer an alternate date, but rather stated only that counsel was traveling, and that the DME Defendants would "comply as soon after I return to NYC as they can." *Id*. Plaintiffs again sought a date certain by which the DME Defendants would respond. *Id*. The DME Defendants did not respond. A week later, Plaintiffs reached out again and offered another extension until June 11, 2018. Ex. 7, 6/4/2018 E-Mail Thread. The DME Defendants offered that "at least . . . some discoverable material [would be made available] by [June] 11th" but "[i]f there will be further delay, [they would] communicate." *Id*.

DME Defendants did not produce anything nor communicate with Plaintiffs by the June 11 deadline, so Plaintiffs offered another extension. Ex. 8, 6/13/2018 E-Mail Thread. When counsel for the DME Defendants indicated that he was undergoing medical treatment (*id.*), Plaintiffs agreed to another extension. Ex. 9, 6/15/2018 A. Raven E-Mail. Three days later, the DME Defendants requested another extension until July 15, 2018. Ex. 10, 6/18/2018 E-Mail Thread. Plaintiffs agreed, explaining that it would be the last extension. *Id*.

Shortly before the July 15, 2018 deadline, the DME Defendants made some limited documents available for copying at Plaintiffs' expense, specifically medical records and bills for

one of the five DME Defendants.³ Yet, the DME Defendants have still not: (1) provided written responses to the document requests indicating what has been produced; (2) produced any records at all for four of the five DME Defendants; (3) served any responses to written interrogatories for any of the DME Defendants; or (4) produced any documents in response to numerous categories of critical records including business records, financial records, bank records, tax records, billing records, contracts and leases, communications, marketing materials, telephone records, employment records, or transcripts.

Plaintiffs agreed to give the DME Defendants an additional two weeks, until July 27, 2018, to provide the missing materials and complete their discovery responses. Ex. 11, 7/12/2018 A. Raven E-Mail. After that final extension passed without additional production or response, Plaintiffs informed the DME Defendants of their intention to file this motion. Ex. 12, 7/30/2018 E-Mail Thread. The DME Defendants responded that Allan Buslon, the incorporator of AB Quality Health, is serving overseas on military duty, and that three of the DME Defendants (Maiga Products Corporation, Madison Products of USA, Inc., and Personal Home Care Products Corp.) are "out of business for over three years and there is no one available who has retained any" documents. *Id*.

Over two months have passed since Defendants' responses were originally due, and despite numerous extensions, the DME Defendants have failed to provide complete discovery responses. Their only objections to discovery were raised by motion on May 15, fully briefed and ruled upon on May 25. Defendants have failure to respond, any other objections to the discovery are waived.⁴

The discovery sought is critical in order to better understand the relationships between and among the DME Defendants and the other providers who operated at 1786 Flatbush, and their roles in the scheme. State Farm Mutual and State Farm Fire respectfully request that the Court order the DME Defendants to (1) provide complete responses and produce all responsive documents to Plaintiffs' First Set of Document Requests, and (2) serve complete, verified answers to Plaintiffs' First Set of Interrogatories, by a date certain, and grant such other relief as the Court finds just and proper.

Respectfully submitted,

*/s/ Jonathan L. Marks*

---

³ The July document production included approximately 6500 documents (totaling under 10,000 pages), and contained medical records and bills related to (1) DME Defendant, Quality Health; (2) Professional Defendant, MSB Physical Therapy, P.C.; and (3) third-party, Maria Masiglia, P.T.

⁴ "A failure to respond or object to a discovery request in a timely manner waives any objection which may have been available." *Cohalan v. Genie Industries, Inc.*, 276 F.R.D. 161, 163 (S.D.N.Y. 2011) (quoting *UBS Intern. Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010); *see also Labarbera v. Absolute Trucking, Inc.*, 2009 WL 2496463, at *1 (E.D.N.Y. Aug. 12, 2009) ("It is well established that by failing to respond or object to a discovery request in a timely manner, a party waives any objection which may have been available."); *Eldaghar v. City of New York Dept. of Citywide Admin. Servs.*, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) ("If a party fails to file timely objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests."). Indeed, "[a]ny other result would...completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences." *Eldaghar*, 2003 WL 22455224, at *1.