# Katten

KattenMuchinRosenman LLP

**525 W. Monroe Street**
**Chicago, IL  60661-3693**
**312.902.5200 tel**
**www.kattenlaw.com**

**JONATHAN L. MARKS**
jonathan.marks@kattenlaw.com
312.902.5337 direct
312.577.1061 fax

September 20, 2018
Magistrate Judge Steven L. Tiscione
United States District Court
225 Cadman Plaza East, Chambers Room N503
Brooklyn, NY 11201

**Re:     1:18-cv-00289-ILG-ST: Response to Maria Masigla Motion to Quash (Dkt. 92)**

Dear Magistrate Judge Tiscione:

Nonparty Maria Masigla a/k/a Maria Shiela Buslon ("Masigla") has moved for a protective order to quash a subpoena seeking her bank records.  Her principal argument is that she is a non-party whose personal financial records are not relevant to the allegations of the complaint.  But while care should be taken with the financial records of non-parties, Masigla played an important role in the conduct alleged in the complaint, and significant information only recently uncovered through discovery has revealed that her bank records are critical to understanding the scheme at issue.  Accordingly, in this instance, the motion to quash a subpoena for a non-party's bank records should be denied.

This case involves fraudulent claims submitted to Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (together, "State Farm") for medically unnecessary treatment provided to automobile accident victims at 1786 Flatbush in Brooklyn by more than 20 different entities and individuals.  Among the providers of these fraudulent services was Defendant MSB Physical Therapy ("MSB"), which rendered cookie cutter physical therapy to virtually every patient treated at 1786 Flatbush.  Am. Compl. ¶¶ 74-233; 89.  As the complaint alleges, Masigla, who is a licensed physical therapist, "is the sole original shareholder, director, officer and incorporator" of MSB.  *Id.* ¶ 37.  Indeed, the name "MSB" appears derived from Maria Shiela Buslon's initials.  Masigla is believed to be married to Allan Buslon ("Buslon").  *See* Ex. A (deed listing Buslon and Masigla as "husband and wife" owners of property).  Buslon is the purported owner of two of the named DME Defendants, Quality Health Supply Corp. and AB Quality Health Supply Corp.  *See* Dkt. 34 ¶ 41; Dkt. 36 ¶ 43.  Buslon's attorney, who also represents all the DME Defendants, recently represented to the Court that Bulson also "acquired an interest in any outstanding claims belonging to [the remaining DME Defendants,] Maiga, Madison and Personal Health."  Dkt. 84 at 2.  These five DME Defendants (which Masigla's husband owned, owns or has an interest in), provided durable medical equipment and orthotic devices to 1786 Flatbush patients, including the same patients treated by Masigla's MSB.

Beyond ownership by Masigla and her husband of up to six entities treating patients at 1786 Flatbush, recent discovery has revealed that Masigla may be playing a role in siphoning profits from the clinic and that information about her bank account should reveal a great deal about the scheme.  At least eight Defendants[1] who treated patients at 1786 Flatbush (not including MSB) wrote checks to Masigla

---

[1] (1) Ksenia Pavlova, D.O.; (2) Allay Medical Services, P.C.; (3) KP Medical Care P.C.; (4) Jules Parisien, M.D.; (5) PFJ Medical Care P.C.; (6); JPF Medical Services, P.C.; (7) AB Quality Health; and (8) Quality Health have all separately made payments to Masigla.

*personally* totaling over $101,000, at least some of which were deposited by Masigla into her personal bank account at Navy Federal Credit Union. Ex. B. Some checks reflect potential structuring in that they were written consecutively, in small amounts, on the same day or couple of days. For example, on March 22, 2018, Defendant Ksenia Pavlova (a physician who treated 1786 Flatbush patients) wrote three separate consecutive checks to Masigla totaling $8,000. *See* Ex. C at 1-2. Defendant PFJ Medical Care (a clinic owned on paper by Jules Parisien, M.D. that treated patients) wrote three separate consecutive checks to Masigla totaling $4,500, over two days. *See* Ex. C at 3-4. It is unknown what these checks were for or why some were structured in this manner. Indeed, there ought to be no legitimate reason providers at 1786 Flatbush paid Masigla personally, as any physical therapy services she was rendering would have been billed by and/or reimbursed to MSB.

Masigla not only received funds from clinic providers; she appears to have played a role in siphoning proceeds from 1786 Flatbush to Tatiana Rybak, an individual who may have controlled activity there. Recent discovery identified numerous instances in which Defendants sent money to individuals and entities who may be connected to Rybak under questionable circumstances. For example, ten Defendant providers wrote over $300,000 in checks to Clara Pantin, the concierge at the Fontainebleau condominium hotel in Miami where Tatiana Rybak lives. *See* Ex. D at 1-3. MSB was involved in transactions like these. MSB was one of eight Defendant providers who wrote at least $40,000 in checks to Vasila Queen, the owner of the nail salon located down the street from Rybak's Florida residence. *Id.* at 4. MSB was one of eight Defendant providers who wrote nearly $160,000 in checks to Vladimir Maistrenko (a Miami interior designer), Maistrenko's wife, and their business Art Glass International (*id.* at 5-6); it was one of eight Defendants who wrote nearly $270,000 in checks to Tsyngauz & Associates, a real estate development firm used by Sergey Rybak, the husband of Defendant Pavlova and Tatiana Rybak's son (*id.* at 7); and it was one of eight Defendants who wrote nearly $130,000 in checks to Antonov Stone Work, a Brooklyn general contractor. Ex. D at 8.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (discovery relevance is extremely broad and "has been construed . . . to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case"). Here, the bank records are critical to a number of issues. First, they are important to understanding how the alleged RICO enterprise operated, including its structure and the relationship among the participants. *See State Farm v. Physiomatrix*, 2013 WL 10572229, at *3 (E.D. Mich. Aug. 13, 2013) (records relevant because they "will establish the structure of the enterprise (namely the connections between and among the named parties *and various non-parties who were also alleged to be part of the underlying conspiracy*), [and] will measure the scope of the fraud") (emphasis added). It is now apparent that the scheme involved generating profits from the provision of services at 1786 Flatbush and siphoning those profits to others. Masigla received payments from multiple providers, some of which appeared to have been structured to avoid detection, and was involved, at the very least through her entity MSB, in moving money to individuals and entities with no apparent connection to the provision of health care services in Brooklyn, but who may be connected to Tatiana Rybak. Her personal bank account was used to advance that activity. The mechanics of that process, what happened to the money and how it was used are relevant the claims at issue. *Id.*

Additionally, determining who is responsible for the conduct at issue is always a relevant inquiry. *See, e.g.*, *U.S. v. Srivastava*, 540 F.3d 277, 292 (4th Cir. 2008) (financial records "highly probative" and "potentially compelling evidence" into whether suspect "conducted and carried out" fraud scheme). Indeed, discovery to determine whether others who have not been named as defendants are responsible or should be named is proper. *See State Farm v. McGee*, 2012 WL 8281725, at *2 (E.D.N.Y. Feb. 21, 2012) (bank records relevant to demonstrate "the control the true owners exerted over [an individual defendant]"); 2013 WL 10572229, at *3 (relevant to "additional potential parties"). An assessment of who received the proceeds from the scheme is critical because the persons or entities who received those

proceeds are most likely the ones responsible for the conduct. *McGee*, 2012 WL 8281725, at *2; 2013 WL 10572229, at *3 (records relevant to "ownership and control"). Assessing whether funds obtained at 1786 Flatbush made their way to others through Masigla's actions, including through her personal bank account, is thus a proper line of inquiry.

The records are also potentially relevant to how the Defendant providers operated, their motives and why they may have provided medically unnecessary services. If a significant portion of Defendant providers' receipts were transferred to others, it would tend to indicate that the providers did not control their practices, they were beholden to others, and could have been directed to provide unnecessary services to profit others. Discovery has shown that a number of Defendants made payments to Masigla that were deposited into her personal bank account, and that Masigla's company was used to move funds to persons and entities unaffiliated with health care services. Masigla's bank records are thus critical to understanding what Defendants received and kept, and why they acted the way they did. While Defendants' accounts may show some money out, only Masigla's account records will reveal *all* of the money received from this activity and what happened to it. Motive is always a relevant issue,[2] and State Farm's unjust enrichment claim turns on how much each defendant ultimately received. *See Myun-Uk Choi v. Tower Research Capital, LLC*, 886 F.3d 229, 237 (2d Cir. 2018); *State Farm v. CPT Med. Servs.*, 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005) (personal financial records relevant to how defendants profited from scheme).

While Masigla's status as a nonparty should not be ignored, it does not erect a bar to disclosure of otherwise relevant financial records. *E.g.*, *Physiomatrix*, at *3 & n.3 (mere status of an account belonging to a non-party "does not automatically shield that information from discovery"). Courts, including courts in this District, have allowed access to financial records of non-parties. *Id.*; *CPT Med. Servs.*, 2006 WL 2460641, at *1 (E.D.N.Y. 2006) (granting "plaintiff's request for certain financial records from non-parties"); *In re Suzuki*, 2014 WL 6908384, at *4 (D. Haw. Dec. 5, 2014) (denying motion to quash subpoena where non-party's "banking information will certainly answer whether she was improperly transferred funds and is relevant to the claims, remedies, and resolution of the underlying action"). Access to Masigla's information is particularly appropriate as she is the sole owner, director and officer of a named defendant and she and her husband own as many as six named defendants. Courts have recognized that in fraud cases involving closely held corporations there is a high probability of funds moving among those entities and personal accounts, and have thus authorized discovery into personal financial information in such circumstances. *State Farm v. Spine Specialists of Michigan, P.C.*, 2016 WL 8787121, at *4 (E.D. Mich. Mar. 14, 2016) (denying motion to quash subpoena seeking personal financials because closely-held corporation solely owned by individual created significant "opportunity for the free flow of money between corporate and personal accounts"); *Physiomatrix*, at *3 (corporate defendants closely held by individuals "easily permits the free flow of money between corporate and personal accounts").

Finally, Masigla's claim to a privacy interest to defeat the subpoena is without merit. Defendants' authorities supporting their privacy interest argument merely recognize that a person has standing to object to a request for their bank records, and most actually permitted their production. *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990); *Zagroba v. York Restoration*, 2011 WL 2133837, at *2–3 (E.D.N.Y. May 26, 2011). Accordingly, Masigla's motion to quash should be denied.

Respectfully submitted,

Jonathan L. Marks

---

[2] *See State Farm v. Fayda*, 2015 WL 7871037, at *3 (S.D.N.Y. Dec. 3, 2015) (personal financial records relevant to defendant's motive); *McGee*, 2012 WL 8281725, at *2 (bank records relevant to defendants' "motive in participating in the fraud"); *Physiomatrix*, 2013 WL 10572229, at *3 (records relevant to motive).