**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, | ) ) ) ) | Case No. 1:18-cv-00289-ILG-ST |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION** |
| Jules Parisien, M.D. et al., | ) ) ) | **FOR JUDGMENT ON THE PLEADINGS** |
| Defendants. | ) | |

**TABLE OF CONTENTS**

I. INTRODUCTION..............................................................................................................1

II. STATEMENT OF FACTS...............................................................................................2

III. LEGAL STANDARD ......................................................................................................4

IV. ARGUMENT ....................................................................................................................5

A. THE STATE FARM ENTITIES HAVE STANDING TO BRING THEIR
RICO CLAIMS. ........................................................................................................5

1. The State Farm Entities Were Injured In Their Business By Reason of a
RICO Violation and Therefore Have Standing...........................................6

2. The State Farm Entities' RICO Claims Do Not Assert Causes of Action
Arising Under Authority Other Than The RICO Statute. ........................9

3. The Complaint Alleges That All of The Services Were Medically
Unnecessary. ................................................................................................10

4. The State Farm Entities' Injuries are Direct. ..........................................12

B. THE STATE FARM ENTITIES NEED NOT ENGAGE IN A PROCESS TO
DECERTIFY DEFENDANT HEALTH CARE PROVIDERS BEFORE
BRINGING RICO CLAIMS. .................................................................................15

C. THE STATE FARM ENTITIES' CLAIMS ARE NOT BARRED BY RES
JUDICATA. .............................................................................................................18

D. THE COMPLAINT SATISFIES RULE 9(B) AND THE PLAUSIBILITY
STANDARD. ............................................................................................................20

E. THE COURT HAS JURISDICTION OVER THE COMPLAINT'S STATE
LAW CLAIMS. .......................................................................................................24

V. CONCLUSION ...............................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Lyons*,
   843 F. Supp. 2d 358 (E.D.N.Y. 2012) ....................................................................17

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)...................................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................1, 5, 20, 21

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
   65 F.3d 1406 (7th Cir. 1995) ...................................................................................15

*Chevron Corp. v. Donziger*,
   No. 11 Civ. 691(LAK)(JCF), 2013 WL 4045326 (S.D.N.Y. Aug. 9, 2013) .........21

*Day v. Moscow*,
   955 F.2d 807 (2d Cir. 1992).....................................................................................18

*Feitshans v. Kahn*,
   No. 06 Civ. 2125, 2006 WL 2714706 (S.D.N.Y. Sept. 21, 2006) .....................18, 19

*Fountain v. United States*,
   357 F.3d 250 (2d Cir. 2004).......................................................................................6

*Gallo v. Teplitz Tri-State Recycling, Inc.*,
   678 N.Y.S.2d 140 (N.Y. App. Div. 2d Dept. 1998) ...............................................19

*Grandon v. Merrill Lynch & Co., Inc.*,
   147 F.3d 184 (2d Cir. 1988).........................................................................2, 10, 12

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S 258 (1992)...................................................................................................14

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   295 F. Supp. 2d 30 (D.D.C. 2003) ...........................................................................14

*In re Sumitomo Copper Litig.*,
   104 F. Supp. 2d 314 (S.D.N.Y. 2000).......................................................................14

*John T. Mather Mem'l Hosp. v. Linzer*,
   928 N.Y.S.2d 872 (N.Y. Sup. App. Term 2011) ....................................................15

*Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*,
    861 F. Supp. 2d 120 (W.D.N.Y. 2012)....................................................................4

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)..............................................................................5

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999)........................................................................13, 14

*LaFaro v. New York Cardiothoracic Grp., PLLC*,
    570 F.3d 471 (2d Cir. 2009).............................................................................5

*Liberty Mut. Ins. Co. v. Blessinger*,
    2007 WL 951905 (E.D.N.Y. Mar. 27, 2007)..............................................21, 22

*Lima v. Hatsuhana of USA, Inc.*,
    No. 13 Civ. 3389(JMF), 2014 WL 177412 (S.D.N.Y. Jan. 16, 2014)..................20

*Lyn v. Inc. Vill. of Hempstead*,
    No. 03 Civ. 5041(DRH), 2007 WL 1876502 (E.D.N.Y. June 28, 2007)..............20

*Moss v. Morgan Stanley Inc.*,
    719 F.2d 5 (2d Cir. 1983), cert. denied, 465 U.S. 1025 (1984)..........................6

*Norton v. Sam's Club*,
    145 F.3d 114 (2d Cir. 1998).............................................................................21

*One Beacon Ins. Grp., LLC v. Midland Medical Care, P.C.*,
    863 N.Y.S.2d 728 (N.Y. App. Div. 2008)..........................................................17

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
    449 Fed. Appx. 57 (2d Cir. 2011).....................................................................21

*Rosa v. City Univ. of N.Y.*,
    No. 04 CV 9139, 2007 WL 1001416 (S.D.N.Y. Apr. 2, 2007).....................18, 19

*Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    20 F. Supp. 3d 305 (E.D.N.Y. 2014)................................................................12

*Sira v. Morton*,
    380 F.3d 57 (2d Cir. 2004)...............................................................................5

*St. Paul Travelers Ins. Co. v. Nandi*,
    No. 24107/06, 2007 WL 1662050 (N.Y. Sup. Ct. May 25, 2007)......................17

*Stair v. Calhoun*,
    No. 07-cv-3906, 2009 WL 3259482 (E.D.N.Y. Oct. 8, 2009)............................22

*State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*,
    No. CV 2007-0051(ENV)(MDG), 2007 WL 2908205 (E.D.N.Y. 2007)........................18, 19

*State Farm Mut. Auto. Ins. Co. v. CPT Med Servs., P.C.*,
    No. 04-CV-5045, 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008) ..................................7, 12, 23

*State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*,
    No. 16-cv-13040, 2017 WL 877396 (E.D. Mich. Mar. 6, 2017)........................................24

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
    No. 14CV9792, 2015 WL 4104840 (S.D.N.Y. 2015) ........................................................14, 23

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
    655 F. Supp. 2d 212 (E.D.N.Y. 2009) ............................................................................ *passim*

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*,
    589 F. Supp. 2d 221 (E.D.N.Y. 2008) .................................................................................16

*State Farm Mut. Auto. Ins. Co. v. Kalika*,
    No. 04 CV 4631(CBA), 2006 WL 6176152 (E.D.N.Y. Mar. 16, 2006)................................17

*State Farm Mut. Auto. Ins. Co. v. Kugler*,
    No. 11–80051, 2011 WL 4389915 (S.D. Fla. Sept. 21, 2011) ..........................................8, 13

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
    No. 12-11500, 2013 WL 509284 (E.D. Mich. Feb. 12, 2013)..........................................13, 24

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
    No. 12-11500, 2014 WL 555199 (E.D. Mich. Feb. 12, 2014)................................................8

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*,
    107 F. Supp. 3d 772 (E.D. Mich. 2015)...........................................................................8, 13, 23

*State Farm Mut. Auto. Ins. Co. v. Rabiner*,
    749 F. Supp. 2d 94 (E.D.N.Y. 2010) .....................................................................................17

*State Farm Mut. Auto. Ins. Co. v. Radden*,
    No. 14-13299, 2015 WL 631965 (E.D. Mich. Feb. 13, 2015)..............................................24

*State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*,
    No. 14-CV-10266, 2014 WL 5427170 (E.D. Mich. Oct. 24, 2014).............................8, 13, 24

*Steele v. Hosp. Corp of Am.*,
    36 F.3d 69 (9th Cir. 1994) .....................................................................................................15

*Tokio Marine and Nichido Fire Ins. Co., Ltd. v. Canter*,
    No. 07 Civ. 5599(PKL), 2009 WL 2461048 (S.D.N.Y. 2009)..............................................18

*United States ex. Rel. Tiesinga v. Dianon Sys., Inc.*,
231 F.R.D. 122 (D. Conn. 2005).................................................................22

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
303 F. Supp. 2d 432 (S.D.N.Y 2004)............................................................6

*United States v. Movtady*,
13 F. Supp. 3d 325 (S.D.N.Y. 2014)...........................................................22

*Vista Surgical Supplies, Inc. v. Utica Mut. Ins. Co.*,
795 N.Y.S.2d 853 (N.Y. City Civ. Ct. 2005)................................................15

**Statutes**

18 U.S.C. § 1341.........................................................................................6

18 U.S.C. § 1961(1).....................................................................................6

18 U.S.C. § 1962.........................................................................................6

18 U.S.C § 1964(c*)*....................................................................................7

28 U.S.C. § 1332(a)(1)................................................................................24

New York Insurance Law § 5101 *et seq*.......................................................16

New York Insurance Law § 5106(b) .............................................................17

New York Insurance Law § 5109 .............................................................16, 17

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................4

Fed. R. Civ. P. 12(c) ...................................................................................4

**Regulations**

11 NYCRR § 65-3.11(b)..............................................................................15

11 NYCRR § 65-3.11(b)(2)..........................................................................15

11 NYCRR § 65-5 *et seq*............................................................................16

**Other Authorities**

Ops. Gen. Counsel N.Y. Ins. Dept. No. 08–04–16 [April 2008]......................15

## I.    INTRODUCTION

The Court should deny the motion for judgment on the pleadings filed by the "Professional Defendants"[1] and the "DME Defendants"[2] to dismiss the First Amended Complaint (Dkt. 5 ("Complaint")) filed by Plaintiffs State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Fire and Casualty and Company ("State Farm Fire") (collectively the "State Farm Entities").  Defendants' Motion ignores the detailed factual allegations pleaded throughout the 94-page Complaint which describe the precise nature of the fraudulent conduct and the specific roles played by each Defendant in their scheme to exploit No-Fault insurance benefits.  Defendants devote the majority of their Motion to misplaced and unsupported arguments challenging the State Farm Entities' ability to seek redress under the RICO statute for the more than $1 million they paid to Defendants by reason of Defendants' fraud.  Defendants contend that dismissal is warranted because the State Farm Entities lack standing under RICO as they have not been injured by reason of a RICO violation; that the State Farm Entities failed to exhaust administrative remedies by seeking to decertify the Defendants with the New York Insurance Department; that some claims are barred by *res judicata*; that the Complaint fails to satisfy Rule 9(b)'s specificity requirements or the plausibility standards under *Ashcroft v. Iqbal*; and that the Court lacks independent jurisdiction over the non-RICO claims. Defendants' arguments misconstrue the law and the Complaint, raise factual issues which are inappropriate for resolution at the pleadings stage, ignore well established precedent, and, if

---

[1] The Professional Defendants are Jules Parisien, M.D., JPF Medical Services, P.C., PFJ Medical Care P.C.; Ksenia Pavlova, D.O., Allay Medical Services, P.C., KP Medical Care P.C.; Frances Lacina, D.O., FJL Medical Services P.C., JFL Medical Care P.C. RA Medical Services P.C.; Darren Mollo, D.C., Darren Mollo, D.C., P.C., ACH Chiropractic, P.C., Energy Chiropractic, P.C., Island Life Chiropractic Pain Care, PLLC; Charles Deng, L.Ac., Charles Deng Acupuncture, P.C.; Luqman Dabiri, M.D.; David Mariano, P.T.; and MSB Physical Therapy P.C.

[2] The DME Defendants are Maiga Products Corporation, Madison Products of USA, Inc., Quality Health Supply Corp., Personal Home Care Products Corp., and AB Quality Health Supply Corp.

accepted, would lead to the absurd, and often rejected result that no defrauded insurer could bring a claim to recover money paid on fraudulent claims. As all of their arguments fail, Defendants' Motion should be denied in its entirety.

## II.   STATEMENT OF FACTS[3]

This case involves a long-running and continuing scheme by a group of healthcare providers and durable medical equipment ("DME") suppliers to exploit No-Fault insurance benefits available to individuals involved in automobile accidents for financial gain. Defendants are physicians, a chiropractor, an acupuncturist and the professional entities they purportedly own, and five DME companies, all of whom submitted bills for medically unnecessary medical services, diagnostic tests and supplies provided at a clinic located at 1786 Flatbush Avenue in Brooklyn ("1786 Flatbush"). The State Farm Entities paid Defendants more than $1 million as a result of their fraudulent claims.

The first step of Defendants' scheme is to obtain access to individuals involved in automobile accidents, which under New York law renders them eligible for up to $50,000 in No-Fault insurance benefits for medical services. Compl. ¶¶ 1, 46. Many of these accidents bear indicia of being deliberately staged. *Id.* ¶¶ 54-59. Many of the patients in these accidents are represented by the same law firm, the Rybak Law Firm PLC, which also represents all but one of the defendant providers in state court lawsuits to collect on No-Fault claims when an insurer refuses to pay the fraudulent bills. *Id.* Within days of the accidents, or often on the same day, these individuals present for treatment at 1786 Flatbush where they are subjected to illegitimate examinations from physicians, chiropractors, and acupuncturists resulting in virtually identical findings and diagnoses across all patients. *Id.* ¶¶ 3-5; 74-76. These false diagnoses are then used

---

[3] In resolving a motion for judgment on the pleadings or a motion to dismiss, the allegations of the complaint must be accepted as true. *Grandon v. Merrill Lynch & Co., Inc.*, 147 F.3d 184, 188 (2d Cir. 1988).

to support a barrage of predetermined and medically unnecessary therapy services and useless diagnostic testing, and prescriptions for the same bundles of DME and supplies.  The Complaint alleges in detail each component of this "Predetermined Treatment Protocol."  It describes: (a) the illegitimate nature of the initial and follow-up examinations used to justify unnecessary treatment (Compl. ¶¶ 78-88; 99-105); (b) the fraudulent physical therapy modalities, chiropractic manipulations, and acupuncture treatment provided to almost every patient on almost every visit, regardless of unique circumstances (*id.* ¶¶ 89-98; 106-112; 122-127); (c) the medically useless diagnostic tests (*id.* ¶¶ 128-149; 154-182); (e) medically unnecessary trigger point injections and dry needling procedures (*id.* ¶¶ 183; 192-205); (f) and the numerous bogus DME and orthotic devices dispensed at 1786 Flatbush (*id.* ¶¶ 206; 210-233).  It also details how the Defendants deliberately misrepresented the nature of the services to circumvent restrictions under applicable New York regulations governing No-Fault claims, which allowed them to exploit the patients No-Fault benefits and seek the largest reimbursement.  *Id.* ¶¶ 1-3, 74, 76, 218.  Defendants' treatment decisions were motivated by profit, not by any decision to provide the necessary care each patient required; under the Predetermined Treatment Protocol, virtually every patient received the same treatment, which should not occur in a legitimate medical setting.  *Id.* ¶¶ 65-66; 74.

The Complaint attaches exemplar examination and treatment forms, and several detailed charts reflecting the highly improbable patterns in documentation and treatment across 300 unique patients who treated at 1786 Flatbush since August 2013.  Compl. Exs. 1-26 (Dkts. 5-1–5-26).  Because none of the services at issue were provided for reasons of medical necessity, but rather to exploit the patients' No-Fault benefits for financial gain, the Complaint alleges that each and every claim submitted by Defendants was fraudulent.  *Id.* ¶ 244.  These charts not only

detail implausible patterns in documentation and treatment, but provide specific details of the fraudulent statements made by Defendants in bills and supporting documentation to the State Farm Entities upon which they relied.  Compl. Exs. 1-26 (Dkts. 5-1–5-26).

To avoid detection of their scheme, Defendants formed a series of business entities and submitted bills to the State Farm Entities using different provider names and tax identification numbers.  Compl. ¶¶ 60-62.  For example, Jules Parisien's services at 1786 Flatbush were billed under Dr. Parisien's own name and tax identification number, followed by those of Allay Medical, PFJ Medical, and JPF Medical.  *Id.* ¶ 12.  Many of the Defendant entities were formed on the same date or incorporated by the same individual.  *Id.* ¶ 62.

The Complaint includes affirmative claims for violations of the substantive RICO statute, RICO conspiracy, common law fraud, and unjust enrichment seeking monetary damages to redress the injuries suffered by the State Farm Entities.  It also seeks a declaration that neither the State Farm Entities nor their insureds are required to pay for the providers' fraudulent bills they have submitted or continue to submit through the date of trial, or for claims in which the providers failed to appear for examinations under oath ("EUOs") as required by their assignment of insurance benefits and New York law.[4]

## III.   LEGAL STANDARD

"The same analysis applicable to a Fed. R. Civ. P. 12(b)(6) motion to dismiss applies to a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings."  *Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*, 861 F. Supp. 2d 120, 127 (W.D.N.Y. 2012).  "'On a motion to dismiss or for judgment on the pleadings, [the court] must accept all allegations in the complaint as true and

---

[4] Among the bases for the declaratory relief on unpaid claims is that Defendants did not verify their claims by appearing for EUOs as required by the New York No-Fault Laws.  The Complaint alleges that at least one Defendant, Maiga Products Corporation ("Maiga"), has filed numerous false affidavits notarized by its attorney, Oleg Rybak, to avoid the consequences of its EUO nonappearance.  *See* Compl. ¶ 233; *see also* Ex. 26 to Compl.

draw all inferences in the non-moving party's favor.'" *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). Generally, a motion for judgment on the pleadings must be based upon the pleadings, and not on additional evidence. *See Sira v. Morton*, 380 F.3d 57, 66–67 (2d Cir. 2004) (observing that where moving party submits material outside the pleadings in support of motion for judgment on the pleadings, the motion should be treated as a motion for summary judgment).

## IV.   ARGUMENT

Defendants raise a series of arguments to seek dismissal, each of which lacks merit. They contend that: (1) the State Farm Entities lack standing to bring their RICO claims because they were not injured by reason of Defendants' RICO violations; (2) the case should be dismissed because the State Farm Entities did not exhaust administrative remedies before filing by seeking to "decertify" Defendants with the New York Insurance Department; (3) some of the state court lawsuits filed by Defendants relating to the underlying insurance claims that are the subject of this litigation have been settled and thus are barred under principles of *res judicata;* (4) the Complaint fails to satisfy Rule 9(b)'s specificity requirements or the plausibility standards under *Ashcroft v. Iqbal;* and (5) the Court lacks independent jurisdiction over the non-RICO claims. All of these arguments fail, and the Court should deny the Motion in its entirety.

### A.   THE STATE FARM ENTITIES HAVE STANDING TO BRING THEIR RICO CLAIMS.

Defendants argue that the State Farm Entities lack standing to bring the RICO claims because they was not injured by reason of Defendants' RICO violations. Defendants' argument rests on three assertions. First, they claim that the State Farm Entities' RICO claims improperly

seek to recover based on violations of state statutes and regulations and medical professional standards which cannot support a RICO claim. Mot. at 7-9. Second, they claim that to the extent the RICO claims depend on allegations that Defendants provided medically unnecessary services, the claims fail because at least "some" of Defendants medical services must have been necessary. *Id.* at 9-12. Third, they assert the State Farm Entities allege they suffered an indirect injury while their insureds suffered a direct injury, and as the State Farm Entities have not met the threshold for bringing a RICO claim as indirectly injured parties they have no standing. *Id.* at 13-19. Each of Defendants' assertions is wrong, and misunderstands the allegations of the Complaint and the law. The Complaint clearly alleges that the State Farm Entities were directly injured by reason of Defendants' RICO violations, and easily satisfies the standing requirements.

> ## 1. The State Farm Entities Were Injured In Their Business By Reason of a RICO Violation and Therefore Have Standing.

To sustain a RICO claim, a plaintiff must allege that the defendant violated the substantive RICO statute, 18 U.S.C. § 1962 in "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affects interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), cert. denied, 465 U.S. 1025 (1984). Section 1961(1) defines "racketeering activity" and sets forth a list of predicate acts, including violations of 18 U.S.C. § 1341 or mail fraud. *See also United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.Supp.2d 432, 443 (S.D.N.Y 2004). Violations of the mail fraud statute require allegations of: (1) a "scheme to defraud; (2) money or property [as the object of the scheme]; and (3) use of the mails [] to further the scheme." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004).

Among the elements of a RICO claim is that a plaintiff allege that it was "injured in his

business or property by reason of a [RICO] violation . . . ."  18 U.S.C § 1964(c*).  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) ("One of RICO's enforcement mechanisms is a private right of action, available to '[a]ny person injured in his business or property by reason of a violation' of the RICO's substantive restrictions.").  The Complaint satisfies this requirement. It alleges a scheme to defraud in which Defendants mailed to the State Farm Entities fraudulent claims demanding payment for medical services.  *See, e.g.*, Compl. ¶¶ 249-251, 254.  It alleges that these claims were fraudulent, and part of a scheme to defraud, because (a) they represented that the patients had undergone legitimate examinations and testing and had been found to have conditions requiring treatment that Defendants would provide when this was not true because the examinations and testing were shams to justify unnecessary treatment (*id.* ¶¶ 78-88; 99-105); (b) the claims represented that patients had injuries caused by automobile accidents (which meant their treatment should be paid for under State Farm automobile policies) when that was not true, and Defendants had not and could not reach any such conclusions (*e.g.*, *id.* ¶¶ 1, 46; 54-59); and (c) the claims represented that the examinations, treatment, testing and supplies provided to patients were medically necessary when they were not.  *Id.* ¶¶ 78-88; 99-105; 128-149; 154-182; 183; 192-206; 210-233.  The State Farm Entities paid more than $1 million by reason of these fraudulent bills and was thus injured in its business.  *Id.* ¶¶ 6, 8, 240.  An automobile insurance carrier paying fraudulent claims is a classic, direct RICO injury routinely recognized by the courts, and Defendants' "argument must be rejected out of hand."  *State Farm Mut. Auto. Ins. Co. v. CPT Med Servs., P.C.*, No. 04-CV-5045, 2008 WL 4146190, at *13 (E.D.N.Y. Sept. 5, 2008) (denying motion to dismiss RICO claim where "State Farm has alleged that it was harmed when defendants mailed or caused to be mailed fraudulent claims, and State Farm paid those claims relying on the misrepresentations contained therein" as "State Farm's financial losses

flow directly from the fraudulent scheme"); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 229 (E.D.N.Y. 2009) (denying motion to dismiss RICO claim where defendants were "alleged to have submitted false and fraudulent claims for reimbursement directly to plaintiff [State Farm], and [State Farm] relied on receipt of these fraudulent claims in paying monies directly to defendants"); *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 783 (E.D. Mich. 2015) (denying motion to dismiss RICO claim as "State Farm's alleged injury derives not from personal injury but from business transactions that resulted in a proprietary loss, *i.e.* the submission to it, and its payment of, allegedly fraudulent claims"); *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-CV-10266, 2014 WL 5427170, at *8 (E.D. Mich. Oct. 24, 2014) ("[A] corporation that sells insurance covering personal injury claims [not barred] from bringing a RICO suit, because the injuries alleged in relation to an enterprise seeking fraudulent reimbursements for services performed are to the business or property of the corporation."); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix*, Inc., No. 12-11500, 2014 WL 555199, at *2 (E.D. Mich. Feb. 12, 2014) ("State Farm's injuries arise from the payment of allegedly fraudulent claims submitted by the Clinics ... an injury [that] . . . is an injury to State Farm's 'business or property.'"); *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11–80051, 2011 WL 4389915, at *10 (S.D. Fla. Sept. 21, 2011) ("Because State Farm alleges it was the direct target and recipient of fraudulent bills and related medical documentation submitted by defendants in connection with unnecessary diagnostic tests and medical procedures allegedly performed by defendants throughout [the] course of the fraudulent scheme alleged in the complaint, and that it was injured in its business or property when it paid first and third party insurance claims on behalf of its insureds in reliance on those bills and reports, the court finds the allegation of a cognizable economic injury which supports its standing to sue under RICO.").

Nothing more is necessary to satisfy the standing requirement of an injury under RICO.

> **2. The State Farm Entities' RICO Claims Do Not Assert Causes of Action Arising Under Authority Other Than The RICO Statute.**

Defendants next attack the Complaint's RICO claims by arguing they improperly rest on alleged failures to comply with the New York no-fault statute, "loop-holes" in the New York no-fault reimbursement process, the New York no-fault fee schedule and/or the standards of the medical profession. Mot. at 8. Presumably Defendants' argument is that because violations of these New York standards and provisions are not RICO predicate acts, such violations cannot cause RICO injuries that would confer standing to the State Farm Entities. The assertions misunderstand the allegations of the Complaint.

In fact, and as described above, all predicate acts underlying the RICO claims are mail fraud based on an alleged scheme to defraud in which Defendants submitted fraudulent bills for medical services. Compl. ¶¶ 249-251, 254. The Complaint does not assert any cause of action, nor does it need to, based on any alleged violation of any state statute or regulation or any standards of the medical profession. Defendants misunderstand the Complaint's references. They are not included to establish RICO predicate acts. Rather, allegations regarding the No-Fault laws demonstrate instances in which Defendants established patient treatment not because it was medically necessary or in the patient's best interest, but because it allowed Defendants to exploit the patients' No-Fault benefits and seek the largest reimbursement from the State Farm Entities. *Id.* ¶¶ 2, 74, 76, 218. Indeed, these references demonstrate that treatment decisions were motivated by profit, not by a decision to provide the necessary care a patient required. *Id.* Allegations regarding a Predetermined Treatment Protocol demonstrate that virtually[5] every

---

[5] Defendants attack the Complaint's use of the words "virtually," "nearly" and "almost" to describe instances in which Defendants provide repetitive, patterned, consistent and predetermined treatment to a significantly large number of patients. Mot. at 3. The criticism misses the point and raises factual

patient received the same treatment in circumstances in which this should not occur in a legitimate medical setting. *E.g.*, *id.* ¶¶ 65-66; 74. These assertions support the underlying allegations that Defendants' representations that treatment was medically necessary are false and fraudulent. Their inclusion provides support for, and does nothing to undermine, a valid RICO claim based on mail fraud.

### 3. The Complaint Alleges That All of The Services Were Medically Unnecessary.

Next, Defendants argue that the RICO claims fail because the Complaint alleges that at least "some" of that treatment must have been necessary, and therefore the State Farm Entities presumably were not injured if they paid for the portion of treatment that was necessary.[6] This argument fails.

First, the Complaint does not, in fact, allege that "some" treatment was necessary. It alleges that *all* of the services described in the Complaint, and detailed in the appendices, were medically unnecessary and Defendants' representations to the contrary were false. Compl. ¶¶ 249, 251, 254-255. The Complaint explains why the services were unnecessary in great detail, documenting issues with each of the treatments, services and supplies provided. *Id.* ¶¶ 1; 78-88;

---

questions inappropriate for a motion for judgment on the pleadings. The Complaint describes instances in which there are patterns in documentation and treatment across a large number of patients that one would not expect in an ordinary patient population receiving appropriate medical care, and that, in the circumstances here, can only be explained by a fraud intended to exploit patient benefits. Those allegations must be accepted as true. *Grandon v. Merrill Lynch & Co., Inc.*, 147 F.3d 184, 188 (2d Cir. 1988). The Complaint references to "virtually," "nearly" or "almost" acknowledge the possibility of rare outliers that are irrelevant to the analysis. While Defendants at some point may attempt to prove that there are outliers and argue that they matter, doing so would involve issues of fact.

[6] Defendants contention that "[u]nder RICO, Stater Farm is *only* entitled to recover for the reimbursement of treatment that was falsely represented to be "medically necessary" when it was – in fact – "medically necessary" is wrong. Mot. at 9 (emphasis added). In fact, the Complaint alleges that Defendants made other misrepresentations, including representing that patients were legitimately examined and tested, that each patients' condition was related to an automobile accident, that services and supplies were performed and provided, and that services and supplies were reimbursable, when these representations were false. *E.g.*, Compl. ¶¶ 1; 78-88; 99-105; 128-149; 154-182; 192-206; 210-233; 244-245. While the State Farm Entities expect to establish each of these misrepresentations, any one of them would entitle it to recovery.

99-105; 128-149; 154-182; 192-206; 210-233.  It alleges that Defendants initial examinations and tests falsely represented patients' conditions and needs, and accordingly they provided no support for the necessity of any of the treatment that followed.  *Id.* ¶¶ 78-88; 99-105; 128-149; 154-182.  It further alleges that the treatment was predetermined, meaning that regardless of what any patient may or may not have required, Defendants determined in advance what every patient would receive, not because it was necessary, but in order to maximize the amount that Defendants could recover under the No-Fault laws.  *Id.* ¶¶ 1-3, 74, 76, 136, 218.

Defendants erroneously point to portions of the Complaint that note that in "some" instances the methodologies they employed can be necessary and valuable.  Mot. at 11 (citing Compl. ¶¶ 129-139).  But those references do no more than explain the relevant health care services and the circumstances in which those services can be beneficial.  *E.g.*, Compl. ¶¶ 114; 136.  It does not follow that the Complaint agrees that Defendants ever provided valuable care.  *Id.* ¶ 136 ("While the ROM Tests and the Muscle Tests could be useful tools in some circumstances . . . under the circumstances employed at 1786 Flatbush, they were medically unnecessary and were part and parcel of the fraudulent Predetermined Treatment Protocol to maximize profits.").

Similarly, Defendants argue that the issue of medical necessity must be determined by a medical professional's fact specific determination and that State Farm must offer "individualized proof" as to which treatments were unnecessary.  Mot. at 11 ("If State Farm is not prepared to offer individualized proof as to which treatments were 'medically unnecessary,' then its complaint must be dismissed in its entirety.").)  But at this stage, State Farm's allegation that all of the services are medically unnecessary must be accepted as true.  *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1988).  Defendants cannot now inject a factual dispute and

suggest that State Farm must offer "proof" for its factual assertions to survive a motion for judgment on the pleadings. *Id.*[7]

### 4.      The State Farm Entities' Injuries are Direct.

Lastly, Defendants challenge the State Farm Entities' standing by claiming that they have suffered an indirect injury, patients have suffered a direct injury, and that the State Farm Entities have not met the necessary threshold for bringing a claim as an indirectly injured party.  Here too, Defendants' analysis fails.

The State Farm Entities have alleged a direct injury to their business from the RICO violation.   *See* supra Part IV.A.1.   Defendants submitted fraudulent claims for No-Fault insurance benefits to the State Farm Entities, and the State Farm Entities paid those claims. Courts routinely recognize that an automobile insurer that pays fraudulent claims has suffered a direct injury to its business and has standing to bring a RICO claim, and Defendants' "argument must be rejected out of hand." *CPT Med Servs., P.C.*, 2008 WL 4146190, at *13 ("State Farm has alleged that it was harmed when defendants mailed or caused to be mailed fraudulent claims, and State Farm paid those claims relying on the misrepresentations contained therein" as "State Farm's financial losses flow directly from the fraudulent scheme").   "Defendants' argument, if successful, would also have the effect of barring virtually all RICO claims by any company with business involving health insurance claims." *Universal Health Grp., Inc.*, 2014 WL 5427170, at *8 (rejecting defendant's argument). *See also State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d at 229 (State Farm had standing to bring RICO claim where defendants were "alleged

---

[7] Indeed, the only case upon which Defendants rely stating the need for "proof" did not involve a motion to dismiss or motion for judgment on the pleadings in which the factual allegations of the complaint are accepted as true. *See Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP*, 20 F. Supp. 3d 305 (E.D.N.Y. 2014) (granting summary judgment on RICO claims where plaintiffs did not present facts showing that third-party physicians would not have prescribed drug absent defendants' fraudulent statements concerning safety and efficacy).

to have submitted false and fraudulent claims for reimbursement directly to plaintiff [State Farm], and [State Farm] relied on receipt of these fraudulent claims in paying monies directly to defendants"); *Pointe Physical Therapy, LLC*, 107 F. Supp. 3d at 783; *State Farm Mut. Auto. Ins. Co. v. Physiomatrix*, Inc., No. 12-1150, 2013 WL 509284, at *2 (E.D. Mich. Feb. 12, 2013); *Kugler*, 2011 WL 4389915, at *10 ("Because State Farm alleges it was the direct target and recipient of fraudulent bills and related medical documentation submitted by defendants in connection with unnecessary diagnostic tests and medical procedures allegedly performed by defendants throughout [the] course of the fraudulent scheme alleged in the complaint . . . the court finds the allegation of a cognizable economic injury which supports its standing to sue under RICO.")

Defendants' argument that the State Farm Entities have suffered an indirect injury rests almost exclusively on its reading of *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999). In that case, a health benefit fund (the "Funds") sued tobacco companies for concealing the dangers of nicotine. The Funds' alleged injury was that if it had known the true risks of smoking at an earlier date, it would have used that knowledge to adopt smoking cessation plans which would have been effective at reducing the number of their members who smoked, thereby decreasing the amounts spent by the Funds for the care of their members who suffered from smoking related illness and increasing the Funds financial stability. *See Laborers*, 191 F.3d at 239. The *Laborers* court found that the Funds' damages claims were "incredibly speculative" because it would be "virtually impossible" to determine the effect, if any, that the smoking cessation programs might have had on the Funds' beneficiaries. *Id.* at 240-41. Furthermore, any harm to the Funds would have been "purely contingent on harm to third parties," namely the "individual smokers," and therefore any injuries to the Funds would be

13

indirect. *Id.* at 239. Therefore, the court held that the injuries alleged by the Funds were too remote to support standing for RICO claims. *Id.* at 241. Court have often distinguished *Laborers* when, as here, a direct injury is alleged. *E.g.*, *In re Sumitomo Copper Litig.*, 104 F. Supp. 2d 314, 321 (S.D.N.Y. 2000) ("In contrast [to *Laborers*], in the present case, the plaintiffs consist of persons who were allegedly directly injured by their presumed reliance on" the RICO fraud); *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 39 (D.D.C. 2003) (denying motion to dismiss where "the [plaintiff] insurance companies [are] able to claim— precisely as they do here—that the Defendants engaged in a scheme to defraud it, and that the company suffered direct economic losses as a result" in contrast to *Laborers* where the "alleged damages were purely derivative of the physical injuries suffered by plan participants"). In stark contrast to *Laborers*, the State Farm Entities' injuries are direct and simple and do not depend on any intervening events. Defendants made false representations directly to the State Farm Entities, they relied on those misrepresentations, and paid over $1 million directly to the Defendants.[8]

Contrary to Defendants' claims, State Farm insureds are not better suited to bring these claims and Defendants do not risk multiple recovery if this RICO case is allowed to go forward.

---

[8] Moreover, none of the policy considerations set forth in *Holmes v. Securities Investor Protection Corp.*, 503 U.S 258 (1992) considered in *Laborers* apply here. First, the amount of State Farm's damages attributable to Defendants' fraud scheme is easy to ascertain. State Farm paid over $1 million dollars directly to the Defendants based on Defendants' misrepresentations submitted directly to State Farm. Compl. ¶¶ 239-240. Defendants claim that "many of [State Farm's] damages are more properly attributed to its poor business practices" rather than to Defendants' fraud. Mot. at 16-17. But such scrutiny into the diligence of State Farm's claims review process is wholly inappropriate, particularly at this stage. *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14CV9792, 2015 WL 4104840, at *2 (S.D.N.Y. 2015). Second, State Farm's injuries do not create complicated apportionment of damages issues. There is no possibility of double recovery, as expenses represent damages to State Farm, not to State Farm insureds. *See, e.g.*, *Steele v. Hosp. Corp of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (patients had no standing to sue for overpayments made by their insurer to the defendant hospital because the insurer had suffered the damages not the patients). Finally, as State Farm is the directly injured party having suffered over $1 million in damages, they have the greatest incentive to vindicate the law as private attorneys general. *See Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1414 (7th Cir. 1995).

Under New York no-fault law, and as noted in the Complaint, individuals injured in automobile accidents treated by Defendants can assign their right to collect no-fault benefits to the providers who rendered services.   11 N.Y.C.R.R. § 65-3.11; Compl. ¶ 47.   Under that assignment, providers acquire a direct claim against the no-fault insurer to recover benefits for services provided, and the patient is excused from further liability to the provider.[9]  *Id.*; *see also e.g.*, *Vista Surgical Supplies, Inc. v. Utica Mut. Ins. Co.*, 795 N.Y.S.2d 853, 854 (N.Y. City Civ. Ct. 2005) ("In a no-fault context, a healthcare provider establishes" entitlement to recover benefits when "demonstrating that it is an assignee under a properly executed assignment") (citing 11 NYCRR § 65–3.11(b)(2)).  Thus, if a provider submits a fraudulent bill, the party directly injured is the insurer who received the bill and paid it, not the patient.[10]

**B.  THE STATE FARM ENTITIES NEED NOT ENGAGE IN A PROCESS TO DECERTIFY DEFENDANT HEALTH CARE PROVIDERS BEFORE BRINGING RICO CLAIMS.**

Next Defendants argue, without a single supporting case, that the Complaint should be dismissed because New York law includes administrative procedures that allow the Commissioner of Health and the Commissioner of Education to decertify providers who are

---

[9] Defendants' suggestion that other insurers might ultimately be responsible for services not covered by a no-fault carrier is highly speculative, offers facts beyond the allegations of the Complaint, and is wrong. "[A]n assignment transfers all of the patient's rights, privileges and remedies to the provider. The provider, therefore, stands in the shoes of the patient" and the provider must agree "not to 'pursue payment directly from the [patient] for services provided.'"  *John T. Mather Mem'l Hosp. v. Linzer*, 928 N.Y.S.2d 872, 873–74 (N.Y. Sup. App. Term 2011) (*citing* Ops. Gen. Counsel N.Y. Ins. Dept. No. 08–04–16 [April 2008]); 11 NYCRR § 65–3.11(b)).  As the patient is released from all further liability to the provider and the patient has transferred all rights under an assignment, a patient should not be in the position to submit subsequent claims to other insurers for services rendered.

[10] Defendants' suggestion that the patient may have claims for battery is again highly speculative, and offers facts beyond the allegations of the Complaint.  Mot. at 19.  Moreover, the suggestion that an individual may have a tort claim for a personal injury does not mean that State Farm was not directly injured in its business or property when it paid a fraudulent claim.  *Cf. Grafman*, 655 F. Supp. 2d at 229 (rejecting argument that "the actual victims of the alleged scheme are patients insured by" State Farm and finding State Farm was directly injured and had standing to bring RICO claim).

involved in "intentionally staging accidents and billing no-fault insurers for health services that were unnecessary or never in fact rendered." Mot. at 19-21 (citing Insurance Law § 5109; 11 N.Y.C.R.R. Part 65-5 *et seq*). The argument appears to assume, though it does not explicitly state, that the State Farm Entities would have a private cause of action under the applicable regulation, and that they had an obligation to exhaust this administrative remedy before filing the RICO claims. Because neither is true, the argument should be rejected.

*First*, nothing in the rules and regulations cited by Defendants creates a private cause of action. *See generally* 11 N.Y.C.R.R. § 65-5 *et seq*.; Insurance Law § 5101 *et seq*; *id.* § 5109. Defendants have not cited a single case creating such a private right of action.[11] Even if such a private right of action existed, it would at best prevent the provider from submitting future claims and would not secure the recovery of amounts the State Farm Entities paid on fraudulent claims. Courts have repeatedly recognized that insurers have the right to bring affirmative actions to recover money wrongfully obtained through fraud, including since the passage of § 5109 in 2005. *E.g.*, *Grafman*, 655 F. Supp. 2d 212 (denying motion to dismiss where State Farm adequately pled that defendant unfairly benefitted from fraudulent misrepresentations); *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221 (E.D.N.Y. 2008); *One Beacon Ins. Grp., LLC v. Midland Medical Care, P.C.*, 863 N.Y.S.2d 728 (N.Y. App. Div. 2008); *St. Paul Travelers Ins. Co. v. Nandi*, No. 24107/06, 2007 WL 1662050, at *7 (N.Y. Sup. Ct. May 25, 2007); *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04 CV 4631(CBA), 2006 WL 6176152, at *5 (E.D.N.Y. Mar. 16, 2006).

---

[11] Furthermore, the notion that decertification could address Defendants' conduct, even if a private party had the right to invoke it, is belied by the facts alleged in the Complaint. The Complaint alleges that Defendants' scheme involved forming multiple entities and using different entities and tax identification numbers to submit bills to prevent insurers like State Farm from identifying fraudulent conduct. Compl. ¶¶ 60-62. Assuming any one entity had been successfully "decertified," Defendants could have, and as alleged by the Complaint would have, simply formed a new entity and continued to bill.

*Second*, to the extent Defendants imply that the State Farm Entities should have exhausted administrative remedies prior to bringing their RICO causes of action, Defendants do not and cannot cite any statute, rule, or case to support such a contention.  There is nothing in New York statute, rule, or law that prevents the State Farm Entities from filing their RICO claim or any other causes of action, and recovering damages through this affirmative lawsuit.  Indeed, the Eastern District of New York has specifically considered Defendants' argument and rejected it.  In *State Farm Mut. Auto. Ins. Co. v. Rabiner*, defendants argued that State Farm's private right of action "was statutorily eliminated by the subsequent passage of New York State Insurance Law § 5109 and that Plaintiff therefore lack[ed] standing to pursue its claims."  749 F. Supp. 2d 94, 99-100 (E.D.N.Y. 2010).  The Court noted that "this regulation appears to provide a streamlined process for the decertification of health care providers who commit No–Fault insurance fraud so that such providers will not be able to continue to submit fraudulent claims," but found it had no bearing on State Farm's right or ability to bring its fraud claims.  It went on to note that "since the passage of § 5109 in 2005 there have been a number of affirmative lawsuits for fraud brought by private insurance companies that have not been dismissed for lack of standing."  *Id.* at 101 (citing cases); *c.f. Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 376–77 (E.D.N.Y. 2012) (denying motion to compel arbitration and allowing Allstate's RICO claims to proceed as nothing in New York Insurance Law § 5106(b) or the individual insurance contracts governing the allegedly fraudulent billings at issue required resolution of claims through arbitration).  Indeed, the annual report from the New York Department of Financial Services which Defendants attach to their Motion only emphasizes the very real harm to the public caused by Defendants and others of their ilk who seek to exploit the New York No-Fault system for their personal gain.

17

## C.   THE STATE FARM ENTITIES' CLAIMS ARE NOT BARRED BY RES JUDICATA.

Defendants argue that the State Farm Entities are barred by the doctrine of *res judicata* from recovering for claims that were settled between the parties.  Mot. at 25-26.  Because there is no basis to resolve this issue on the pleadings or the public record, the argument fails.

In general, "*[r]es judicata* bars a subsequent lawsuit where a defendant can show (1) an *adjudication* on the merits in the previous action, (2) that the prior action involved the same parties or their privies, and (3) that the claims asserted in the subsequent suit were raised, or might have been raised, in the prior proceeding."  *Tokio Marine and Nichido Fire Ins. Co., Ltd. v. Canter*, No. 07 Civ. 5599(PKL), 2009 WL 2461048, at *4 (S.D.N.Y. 2009).  A party may raise a *res judicata* or collateral estoppel on a motion to dismiss or motion for judgment on the pleadings "only where the basis for that defense is set forth on the face of the complaint or established by the public record."  *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, No. CV 2007-0051(ENV)(MDG), 2007 WL 2908205, at *2-3 (E.D.N.Y. 2007) (citing *Rosa v. City Univ. of N.Y.*, No. 04 CV 9139, 2007 WL 1001416, at *1 (S.D.N.Y. Apr. 2, 2007)); *Feitshans v. Kahn*, No. 06 Civ. 2125, 2006 WL 2714706, at *2 (S.D.N.Y. Sept. 21, 2006)); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (*res judicata* challenge properly raised on a 12(b)(6) motion if it is clear from the face of the complaint that plaintiff's claims are barred).  Therefore, here, the Court may only consider the pleadings and any public documents filed in connection with state court proceedings that the Court could take judicial notice of.  *Accurate*, 2007 WL 2908205, at *2-3 (citing *Rosa v. City Univ. of N.Y.*, No. 04 CV 9139, 2007 WL 1001416, at *1

(S.D.N.Y. Apr. 2, 2007)); *Feitshans v. Kahn*, No. 06 Civ. 2125, 2006 WL 2714706, at *2 (S.D.N.Y. Sept. 21, 2006).[12]

Defendants have identified nothing in the Complaint or public record that supports the defenses of *res judicata*. At best, the motion and attached declaration list purported suits which Defendants claim have been settled. But neither the Complaint nor the public record (nor Defendants submissions for that matter) establish any settlement, the terms of any settlement or what was purportedly resolved by settlement. The case of *State Farm v. Accurate* is instructive. 2007 WL 2908205. There the Court considered defendants' motion to stay discovery pending their motion to dismiss State Farm's RICO claims on *res judicata* grounds based on the argument that the issues had been resolved in state no-fault arbitrations. *Id.* at *1-2. The Court denied the motion because a finding on *res judicata* would require review of materials outside of the complaint and not in the public record, including the arbitration awards themselves. *Id.* at *2. Magistrate Judge Go noted that even if the court were to convert defendants' motion to a motion for summary judgment, defendants having submitted only one exemplar arbitration was "insufficient information for substantive determination" of *res judicata*. *Accurate*, 2007 WL 2908205, at *2. Here, there is no information in the Complaint, Answer, or the public record to reach any conclusion about the purported settlements, and so Defendants' argument must be rejected.[13]

---

[12] Defendants only argue *res judicata* principles. But the standards under collateral estoppel would be the same, *see Gallo v. Teplitz Tri-State Recycling, Inc.,* 678 N.Y.S.2d 140, 142 (N.Y. App. Div. 2d Dept. 1998) (stipulation of settlement did not bar action under either the doctrines of collateral estoppel or res judicata), and the pleadings and public record provide no basis for application of the doctrine.

[13] While it is not necessary to address the *res judicata* implications of any purported settlements of claims for benefits because Defendants cannot raise the issue on the record before the Court, it is doubtful that any settlements could have an impact on this case. First, it is unclear whether any of these resolutions would meet the requirements for *res judicata*, such as an adjudication on the merits, a dismissal with prejudice, or some indication that the claims were actually raised or could have been raised in the prior

### D.     THE COMPLAINT SATISFIES RULE 9(B) AND THE PLAUSIBILITY STANDARD.

Defendants appear to argue that the Complaint is insufficiently pled in two additional respects — that its allegations are not plausible under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and that it fails to plead fraud with specificity under Rule 9(b).  Both arguments fail.

Defendants set forth the *Iqbal* plausibility standard for complaint allegations and then state in conclusory fashion that the Complaint contains "boilerplate allegations" and is "insufficient under federal rules of pleading."  Mot. at 5.  It is unclear whether Defendants are merely reciting the pleading standard which they intend to apply to their other arguments, or if they are making a stand-alone argument that the alleged facts do not plausibly support the Complaint's causes of actions.  If they intend such a stand-alone argument, the failure to make it clearly, explain it and provide support allows the argument to be rejected without further consideration.  "It is well established that '[i]ssues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"  *Lima v. Hatsuhana of USA, Inc.*, No. 13 Civ. 3389(JMF), 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) (quoting *Lyn v. Inc. Vill. of Hempstead*, No. 03 Civ. 5041(DRH), 2007 WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007)); *see also, e.g.*, *Chevron Corp. v. Donziger*, No. 11 Civ. 691(LAK)(JCF), 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013) (noting that party "ha[d] waived [an] argument by failing to develop it"); *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 Fed. Appx. 57, 58-59 (2d Cir. 2011) ("[I]ssues adverted to in a perfunctory

---

proceeding.  Second, to the extent that such settlements related to lawsuits filed by the providers after State Farm refused to pay a bill, any such settlements would necessarily have involved ***unpaid*** claims which would not impact State Farm's claims for damages on ***paid*** claims.  Third, any settlements would likely have involved resolution of only one bill for one service on one particular date.  They would thus have no effect on other services from that provider, services by that provider on other dates, or even different services by that provider on the same date as the bill in question.  At best, those settlements might raise a disputed issue of fact about a provider's bills related to a single patient, none of which would bar any of the causes of action set forth in the Complaint.

manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived.").[14]   A review of the detailed Complaint confirms that it contains facts that plausibly support the causes of action.

Defendants do argue that the Complaint's RICO and fraud allegations are not pled with sufficient particularity as required by Rule 9(b).  Mot. at 27-30.  Defendants complain that "State Farm attributes much of the purported misconduct it alleges to 'Defendants' generally," failing to "name specifically who did what, who said what, or who knew what at what time or who prepared what."  Mot. at 28-29.  Defendants misstate what is required and the allegations of the Complaint.

Rule 9(b) requires only that when a complaint alleges fraud, the circumstances of the false statements must be pled with specificity.  *Grafman*, 655 F. Supp. 2d at 227 (complaint must identify "the specific statements plaintiff claims were false or misleading").  This requires a pleader to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Liberty Mut. Ins. Co. v. Blessinger*, 2007 WL 951905, at *5 (E.D.N.Y. Mar. 27, 2007).  Rule 9(b) does not apply to the elements of RICO or mail fraud other than when a RICO claim is based on mail fraud, the underlying fraudulent statements at issue must be plead with specificity.  *Blessinger*, 2007 WL 951905 at *5 (RICO claim based on fraud satisfied Rule 9(b) by alleging four elements about false statement); *Grafman*, 655 F. Supp. 2d at 227 ("In a

---

[14] The only specific observation Defendants make is that it is "telling" that every service billed by the professional corporations was part of the scheme.  Mot. at 5.  But Defendants' observation does no more than raise a factual issue inappropriate for a motion for judgment on the pleadings.  The standard is whether the alleged facts plausibly support the causes of action — not whether Defendants agree with the facts.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Indeed, it is hardly inconceivable (and certainly more likely to be true) that each provider operating out of alleged RICO enterprise would be involved in a scheme to defraud through the provision of fraudulent services.

complex civil RICO action involving multiple defendants, Rule 9(b) does not require that the temporal or geographic particulars of each mailing be stated with particularity") (quotations omitted); *see also United States v. Movtady,* 13 F. Supp. 3d 325, 332 (S.D.N.Y. 2014); *Stair v. Calhoun,* No. 07-cv-3906, 2009 WL 3259482, at *5 (E.D.N.Y. Oct. 8, 2009); *United States ex. Rel. Tiesinga v. Dianon Sys., Inc.*, 231 F.R.D. 122, 123 (D. Conn. 2005) (noting that with more complex fraudulent schemes that occur over a period of time and involve "thousands of billings documents," courts have relaxed Rule 9(b)'s heightened pleading requirements).

Accordingly, the only pleading requirement that Rule 9(b) imposes on the Complaint is that the circumstances of the false statements at issue be pled with specificity.  The Complaint more than fulfills this obligation.  It alleges what the material misstatements were, who made them and caused them to be made, when they were made and why they were fraudulent.  It alleges that Defendants submitted, or caused to be submitted, bills and supporting documentation to the State Farm Entities that represented that (a) patients were legitimately examined and tested to determine the true nature and extent of their injuries, when they were not (Compl. ¶¶ 78-88; 99-105); (b) each patient's condition was related to an automobile accident and no other contributing factor, when these Defendants did not legitimately reach such conclusions (*id.* ¶¶ 244, 251); and (c) the services and supplies were performed, were provided, were medically necessary and/or were reimbursable, when, in fact, they either were not performed, not provided, not medically necessary and/or not reimbursable.  *E.g.*, Compl. ¶¶ 89-98; 106-112; 122-149; 154-183; 192-205; 206; 210-233.

In a far cry from simply "lumping" Defendants together, the exhibits to the Complaint detail the specific fraudulent services billed by Defendants, the dates of service, and identify which particular provider Defendant rendered which treatment. *See, e.g.*, Compl. Ex. 2 (services

billed for by medical doctor and D.O. defendants); Ex. 4 (services billed for by chiropractic defendants); Ex. 5 (services billed for by acupuncture defendants); Ex. 6 (NCV/EMG testing billed for by various identified defendants); Ex. 8 (DME billing, detailing DME Defendant as well as prescribing doctor Defendant). Exhibit 1 identifies the date the bill for the first service received by that patient on that claim was mailed. Courts in the Eastern District of New York and across the country have consistently concluded that complaints with these types of allegations and detailed charts satisfy federal plausibility standards and Rule 9(b). *See, e.g.,* *Grafman*, 655 F. Supp. 2d at 231 (State Farm "satisfie[d] Rule 9(b)" by explaining in complaint why insurance claims were fraudulent and including "in multiple exhibits to its Amended Complaint, an extensive sampling of statements alleged to be fraudulent, including dates of mailing, corresponding claim numbers, entities which submitted many of the claims, the price allegedly paid by the submitting entity and the price charged to" State Farm); *CPT Med Servs., P.C.*, 2008 WL 4146190, at *12 ("State Farm not only described the nature of the fraudulent misrepresentations in the Amended Complaint, but it has more than adequately particularized the fraudulent statements made by all the defendants involved in this action by attaching charts to the Amended Complaint."); *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14cv9792, 2015 WL 4104840, at *2 (S.D.N.Y. 2015) (denying motion to dismiss where Complaint alleged defendants operating out of shared medical facility in Manhattan engaged in scheme to submit bills to State Farm misrepresenting services as medically necessary and actually performed); *Pointe Physical Therapy, LLC*, 107 F. Supp. 3d at 794-95 (defendants put "on notice of the claims with sufficient particularity[,]" when the exhibits detail the "claims that [were] alleged to have been fraudulent, the dates of service and the nature of services rendered that State Farm claims were either excessive or not provided"); *State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, No. 16-

cv-13040, 2017 WL 877396, at *7 (E.D. Mich. Mar. 6, 2017) (State Farm's 116-page complaint and 23 "charts detailing the fraudulent services purportedly rendered to each patient, the dates of service and the amounts billed" provided defendants with "sufficient notice of the fraudulent misrepresentations they are alleged to have made"); *State Farm Mut. Auto. Ins. Co. v. Radden*, No. 14-13299, 2015 WL 631965, at *1 (E.D. Mich. Feb. 13, 2015); *Universal Health Grp., Inc.*, 2014 WL 5427170, at *3; *Physiomatrix, Inc.*, 2013 WL 509284, at *5.

The State Farm Entities have satisfied the relevant pleading standards, and Defendants' Motion should be denied.

### E.     THE COURT HAS JURISDICTION OVER THE COMPLAINT'S STATE LAW CLAIMS.

Finally, Defendants argue that the State Farm Entities' common law causes of action for fraud and unjust enrichment should be dismissed if the RICO claims are dismissed because the RICO claims "serve as this Court's sole source of original jurisdiction." Mot. at 31. Because the RICO claims should not be dismissed, it should not be necessary to address this argument.

However, even without the RICO claims, this Court has original diversity jurisdiction over the state law claims under 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000 and Plaintiffs State Farm Mutual and State Farm Fire are citizens of Illinois, *see* ¶¶ 8, 10-11, while each of the Defendants are citizens of New York or Florida. *Id*. ¶¶ 8, 12-13, 16, 20-43 . Thus, any challenge to the RICO claims does not and should not deprive this Court of jurisdiction over the remaining claims.

## V.     CONCLUSION

For all the forgoing reasons, the Court should deny Defendants' Motion for Judgment on the Pleadings (Dkt. 89) in its entirety.

Dated: October 19, 2018
Chicago, Illinois

KATTEN MUCHIN ROSENMAN LLP

By:  */s/ Jonathan L. Marks*
Ross O. Silverman (NY Bar No. 4147922)
Jonathan L. Marks (NY Bar No. 5462874)
Patrick C. Harrigan (admitted *pro hac vice*)
Anne Raven (admitted *pro hac vice*)
Silké G. Watson (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone:  312.902.5200
Facsimile:  312.902.1061
ross.silverman@kattenlaw.com
jonathan.marks@kattenlaw.com
patrick.harrigan@kattenlaw.com
anne.raven@kattenlaw.com
silke.watson@kattenlaw.com

Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022-2585
Telephone:  212.940.8800
michael.rosensaft@kattenlaw.com

*Attorneys for Plaintiffs State Farm Mutual*
*Automobile Insurance Company and State*
*Farm Fire and Casualty Company*

25

## CERTIFICATE OF SERVICE

I, Jonathan L. Marks, an attorney, hereby certify that on October 19, 2018, I electronically filed the foregoing paper with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

By:         */s/ Jonathan L. Marks*

Jonathan L. Marks

Attorney for Plaintiffs
