# *Exhibit 10*

1

1

2  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF KINGS - CRIMINAL TERM - PART 11
3  --------------------------------------------X
   THE PEOPLE OF THE STATE OF NEW YORK,
4

5                                        Indictment
            -against-                    No.4270-99
6
   TATIANA RYBUK,
7
                        Defendant.
8
   --------------------------------------------X
9                      360 Adams Street
   PLEA                Brooklyn, New York
10                     October 27, 1999

11 B E F O R E:

12     HONORABLE NEIL JON FIRETOG,

13                         Justice.

14 A P P E A R A N C E S:

15

16     OFFICE OF CHARLES J. HYNES, ESQ.
       DISTRICT ATTORNEY, KINGS COUNTY
17          Attorney for the People
            BY: ANN SEELY, ESQ.,
18          & ELLEN BURACH, ESQ.,
            Assistant District Attorneys
19

20
       DAVID RUCK, ESQ.,
21     Attorney for the Defendant
            One Whitehall Street
22          New York, NY 10004

23
                            Teresa McGrath
24                          Official Court Reporter

25

                      TM

2

1    Plea

2        THE CLERK:  Calendar number eleven,

3    Indictment 4270 of 1999, Tatiana Rybuk.

4        Defendant is present with attorney.

5        Your appearance, for the record?

6        MS. SEELY:  Ann Seely, for the Office

7    of the District Attorney.

8        MR. RUCK:  Good afternoon, your

9    Honor.

10        My appearance is David Ruck, R-u-c-k,

11    One Whitehall Street, New York City.

12        MS. BURACH:  Ellen Burach, for the

13    Office of the District Attorney.

14        THE COURT:  All right.  I have been

15    provided with a possible disposition to

16    this case and in exchange for a plea of

17    guilty to an attempt to count one, plead

18    guilty to count three, and a plea of

19    guilty to twelve other insurance fraud

20    counts that this will be in full

21    satisfaction of all charges in this

22    indictment as well as any other pending or

23    any other matter stemming out of this

24    criminal activity and that in exchange for

25    these pleas that I will sentence the

TM

3

Plea

1
2      defendant to five years probation with
3      five special conditions, including
4      community service, restitution, waiver of
5      unpaid claims, signing corporate
6      resolutions, and refraining from engaging
7      in certain activities.

8          THE CLERK:  Community service?
9          THE COURT:  Yes.
10         Miss Rybuk, is that what you want to
11     do?
12         THE DEFENDANT:  Yes.
13         THE COURT:  Listen to me carefully.
14         Raise your right hand.
15         Do you swear to tell the truth, the
16     whole truth, and nothing but the truth?
17         THE DEFENDANT:  Yes.
18         THE COURT:  Put your hand down.
19         Listen to me carefully, according to
20     the facts as I understand them to be, it
21     is alleged that you, acting in concert
22     with a number of other individuals
23     including Paul Schneider, Julia Kofman,
24     Gene Arbitman, and various medical PC
25     corporations, including Bakshi Medical

TM

4

1                          Plea

2       Services, HAS Medical Services, All

3       Medical Surgical Supply Corp, Jamaica

4       Avenue Medical Services, PC, Flatbush

5       Medical Services PC, Bulsara Medical

6       Services PC, all engaged in the crime of

7       enterprise corruption in that on or about

8       and between December 2nd of 1996 and

9       April 12th of 1999, these dates being

10      approximate and inclusive, here in the

11      County of Kings and elsewhere, that you,

12      acting in concert with these other

13      defendants, having knowledge of the

14      existence of this criminal enterprise and

15      of the nature of its activities, being

16      employed by or associated with such

17      enterprise, intentionally conducted and

18      participated in the affairs of the

19      enterprise by participating in a pattern

20      of criminal activity, including making

21      payoffs to persons known as steerers who

22      brought individuals, who had purportedly

23      been in automobile accidents, to medical

24      clinics as patients so that services could

25      be billed; fraudulently billing insurance

                          TM

1                         Plea

2    companies for unnecessary and/or

3    unperformed medical visits and procedures

4    related to these patient-claimants under

5    the carriers' State of New York No-Fault

6    automobile insurance policies; also

7    fraudulently billing insurance carriers

8    for unnecessary and/or unperformed

9    physical therapy treatment for these

10   patients; fraudulently billed insurance

11   carriers for durable medical equipment

12   using forged doctors' prescriptions and

13   false backup invoices; and fraudulently

14   billed for studies, including nerve

15   conduction studies known as CAT scans --

16   as well as CAT scans, x-rays, MRI's all

17   based upon forged and false medical

18   reports.

19        Are these facts true?

20        THE DEFENDANT:  Yes.

21        THE COURT:  You were engaged in doing

22   this?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Specifically, there are a

25   number of acts that are required to show

6

1          Plea

2     the pattern activity, in this case there

3     are at least sixty some-odd acts alleged

4     and I want to ask you specifically about

5     two of them.

6          On or about and between August 2nd of

7     1997 and September 17th of 1997, both

8     dates being approximate and inclusive,

9     here in Brooklyn, you, Paul Schneider,

10    Julia Kofman, Gene Arbitman, and the

11    Jamaica Clinic, acting in concert with

12    others, with the intent to defraud,

13    including intent to commit another crime

14    including Grand Larceny and Insurance

15    Fraud, you aided and concealed the

16    commission thereof that crime by making

17    and causing to be made false entries in

18    business records of an enterprise, namely

19    physical therapy progress notes submitted

20    to the Allcity Insurance Company from the

21    Jamaica Clinic pursuant to a claim number

22    413-016-959-8 for services allegedly

23    rendered on August 2nd of 1997,

24    August 6th, and August 7th of 1997.

25          Is that true?

TM

7

1          Plea

2              THE DEFENDANT:  Yes.

3              THE COURT:  It's also alleged that on

4      or about July 17th of 1997 and August 21st

5      of 1997, that you, acting in concert with

6      the same individuals and the Bakshi Clinic

7      did commit the crime of Grand Larceny and

8      Insurance Fraud and aided and concealed

9      the commission of that crime by making

10     false entries in business records of an

11     enterprise, namely physical therapy

12     progress notes submitted to Allcity from

13     Bakshi pursuant to claim 413-016-960-7 for

14     services allegedly rendered and that

15     occurred on July 17th, 19th, and 21st of

16     1997.

17             Are those true, also?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Now I know you have

20     discussed with Mr. Ruck the remaining

21     sixty acts, and in discussing those acts,

22     and I ask you now, are those acts true,

23     that you committed those acts with these

24     other individuals?

25             THE DEFENDANT:  Yes.

TM

8

1                        Plea

2          THE COURT:  Now, it's also alleged

3     that you engaged, under count three, with

4     a scheme to defraud.

5          MR. RUCK:  Your Honor, if I may, I may

6     not have been listening attentively, but

7     the allocution on count one is as to

8     Attempted Enterprise Corruption in

9     violation of 110/460-20; is that correct?

10         THE COURT:  Subdivision 1, Subdivision

11    A.

12         MR. RUCK:  Thank you.

13         THE COURT:  Under count three it's

14    alleged that you, acting in concert with

15    the same individuals, committed the crime

16    of a Scheme to Defraud in the First

17    Degree, in that you and others, these

18    defendants, on or about and between

19    December 2nd of 1996 and April 12th of

20    1999, both dates being approximate and

21    inclusive, here in the County of Kings and

22    elsewhere, acting in concert, engaged in a

23    scheme constituting a systematic ongoing

24    course of conduct with the intent to

25    defraud more than one person and to obtain

                      TM

9

1                      Plea

2      property from more than one person by

3      false and fraudulent pretenses,

4      representations and promises, and so

5      obtained property with a value in excess

6      of $1,000, that is currency, from the

7      various insurance carriers, including

8      Allcity, Progressive, Allstate, Geico,

9      Nationwide, Prudential, State Farm,

10     Integon, New York Central, National

11     Grange, Eagle and American Transit.

12          Are those facts true?

13          THE DEFENDANT:  Yes.

14          THE COURT:  I also want to add at this

15     point before we continue that it has come

16     to my attention that Prudential is one of

17     the insurance companies defrauded.  My

18     wife is a vice-president for Prudential in

19     the compliance area.

20          Does that affect this plea in any

21     way?

22          MR. RUCK:  No, your Honor.

23          THE COURT:  All right.

24          Now, it is alleged that you committed

25     the crimes of Insurance Fraud against

TM

10

Plea

1

2    various insurance companies and they have

3    selected twelve different instances where

4    it is alleged that between a particular

5    time and place and date, here being in

6    Brooklyn, that you, acting in concert

7    with Paul Schneider, Julia Kofman, and

8    Gene Arbitman, as well as various of these

9    clinics, did, with the intent to defraud

10   and to commit another crime, excuse me,

11   did commit the crime of Insurance Fraud by

12   committing a fraudulent insurance act in

13   that you knowingly and with intent to

14   defraud, and pursuant to a common scheme

15   or plan, presented or caused to be

16   presented, and prepared with the knowledge

17   and belief that it would be presented to

18   an insurer or to an agent of an insurance

19   company, a written statement as part of

20   and in support of a claim for payment and

21   other benefit pursuant to an insurance

22   policy for commercial or personal

23   insurance, which you knew to contain

24   materially false information concerning a

25   material fact, and that you concealed, for

TM

1                    Plea

2       the purpose of misleading, information

3       concerning that material fact; namely,

4       various acts.

5           Now I am going to go through these

6       acts and you will tell me whether or not

7       it's true.

8           Under count nineteen it's alleged that

9       this occurred between August 2nd of 1997

10      and September 17th of 1997 where physical

11      therapy progress notes were submitted to

12      Allcity from the Jamaica Clinic pursuant

13      to a claim for services rendered on

14      August 2nd of 1997, the 4th, and the 6th.

15          Is that true?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Under count thirty-five

18      it's alleged that the defendants, acting

19      together, on or about September 19th of

20      1997 and October 24th of 1997 submitted a

21      false medical report to Progressive from

22      the Flatbush Clinic for services allegedly

23      rendered on September 19th of 1997.

24          Is that true?

25          THE DEFENDANT:  Yes.

TM

1               Plea

2          THE COURT:  It's also alleged in count

3     fifty-nine that between March 23rd of '98

4     and April 16th of 1998 you submitted, with

5     these others, for the purpose of

6     misleading, a medical report to Allstate

7     Insurance from the HAS Clinic for services

8     allegedly rendered on March 23rd of 1998.

9          Is that true?

10         THE DEFENDANT:  Yes.

11         THE COURT:  It's also alleged in count

12    sixty-seven that between December 15th of

13     '97 and February 20th of 1998, that a

14    false medical report was submitted to

15    Geico from the ALL Clinic pursuant to a

16    claim for services allegedly rendered on

17    December 18th of 1997.

18         Is that true?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Under count eighty-three

21    it's alleged that a false medical report

22    was submitted to Nationwide from the

23    Bakshi Clinic for a claim allegedly for

24    services rendered on September 25th of

25    1996 and that this was between that date

TM

13

1          Plea

2      and the date of payment of December 19th

3      of '97.

4          Are those facts true?

5          THE DEFENDANT:  Yes.

6          THE COURT:  On the eighty-seventh

7      count it's alleged that between July 12th

8      of '97  and August 21st of '97, that

9      everyone knew about and participated in

10     the filing of false physical therapy

11     progress report notes to the Prudential

12     from Bakshi which alleged services

13     rendered on July 12th.

14         Is that true?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Under the ninety-ninth

17     count of the indictment it's alleged that

18     on or about and between October 16th

19     of '97 and December 1st of '97, that false

20     physical therapy progress reports were

21     submitted to State Farm from the Bakshi

22     Clinic for services allegedly rendered on

23     October 16th, 18th and 20th.

24         Is that true?

25         THE DEFENDANT:  Yes.

                    TM

14

1                      Plea

2           THE COURT:  It's also alleged that on

3    October 9th of '97 to January 28th of '98,

4    a Verification of Treatment form for the

5    sciatic nerve block was submitted to Eagle

6    Insurance by HAS pursuant to a claim for

7    services allegedly rendered on October 9th

8    of 1997.

9           Is that true?

10          THE DEFENDANT:  Yes.

11          MR. RUCK:  That's count one hundred

12   one?

13          THE COURT:  One hundred one.

14          On count one hundred three it is

15   alleged that between November 6th

16   of '97 and February 24th of '98, a false

17   medical prescription for durable medical

18   equipment dated November 6th of '97 was

19   submitted to American Transit for or from

20   the ALL Clinic pursuant to claim number

21   604-457-07.

22          Is that true?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And as to the hundred and

25   seventh count it's alleged that on or

                      TM

15

1        Plea

2    about and between November 28th of '97 and

3    February 23rd of '98, that a false medical

4    report was submitted to Integon from

5    Bakshi Clinic for services allegedly

6    rendered on November 28th of 1997.

7        Are those facts true?

8        THE DEFENDANT:  Yes.

9        THE COURT:  As to the hundred and

10   fifteenth count it's alleged that a false

11   Verification of Treatment form for sciatic

12   nerve block was submitted to New York

13   Central from the HAS Clinic for services

14   allegedly rendered on October 10th of 1997

15   for a period covering October 10th to

16   January 19th of '98.

17        Are those facts true?

18        THE DEFENDANT:  Yes.

19        THE COURT:  And last, as to the

20   hundred and thirty-seventh count, it's

21   alleged that on or about and between

22   September 16th of '98 and January 29th of

23   '99, that a false medical prescription

24   for durable medical equipment dated

25   September 16th of 1998 was submitted to

TM

1                    Plea

2        the National Grange from Bulsara Clinic

3        for claim number 71Y-815-46.

4            Are those facts true?  .

5            THE DEFENDANT:  Yes.

6            THE COURT:  Now, you understand as

7        part of this allocution that it is alleged

8        that you engaged in these fraudulent

9        insurance acts with the knowledge and the

10       participation of the doctors and clinics,

11       including but not limited to an individual

12       by the name of Hussaini, Bulsara,

13       Reyes-Arguelles, Mallela, and Lahiri,

14       and S.L. Medical Services, PC, Canarsie

15       Medical Services, PC, Avenue N Medical

16       Services, PC, Z.A.R.A. Medical Services,

17       PC, and Serenicy Durable and Medical Corp

18       all knew about this.

19           Is that true?

20           THE DEFENDANT:  Yes.

21           THE COURT:  In furtherance of this

22       criminal enterprise and insurance fraud

23       your group submitted false claims to

24       insurance companies, included but not

25       limited to Allstate, Progressive, Geico,

TM

17

Plea

1

2     Travelers, as well.

3          Is this true?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And that part of the

6     falsity was to forge the signatures of

7     these doctors mentioned above on medical

8     reports, progress notes, prescription for

9     durable medical equipment.

10         Is that true?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And that Rabiner owned

13    certain diagnostic centers and was paid

14    for the referrals that were made to these

15    imaging companies; is that right?

16         MR. RUCK:  I think actually, your

17    Honor, it is that those centers made

18    payments rather than received payments.

19         MS. BURACH:  Right.

20         THE COURT:  All right.  They made

21    kickbacks; is that it?

22         MS. BURACH:  Yes.

23         THE COURT:  To the group, and that's

24    Metroscan Imaging, Parkway MRI, Belt

25    Parkway Imaging, Diagnostic Imaging, and

TM

18

1               Plea

2    Metropolitan Radiological Imaging.

3         Is that true?

4         THE DEFENDANT:  Yes.

5         THE COURT:  All right.  Now, you

6    understand you are pleading guilty to a

7    number of very serious crimes.  The

8    promise that I am making you is based upon

9    the agreement that your attorneys worked

10   out with the DA, and I have gone over it

11   and I will go along with it, is that you

12   are going to do five hundred hours

13   community service, you are going to be

14   placed on probation for five years with

15   five special conditions; five hundred

16   hours of community service, restitution of

17   one million dollars to be paid over the

18   five years, and we will work out a

19   schedule, that you will waive all unpaid

20   claims for insurance payments associated

21   with the Avenue U Enterprise, including

22   but not limited to claims related to All

23   Medical Surgical Supply, Corp., Flatbush

24   Medical Services, PC, HAS Medical

25   Services, PC, Avenue U Medical Services,

TM

19

1          Plea

2    Jamaica Avenue Medical Services, PC,

3    Bakshi Medical Services, PC, Bulsara

4    Medical Services, PC, and that you will

5    sign a release for these unpaid claims

6    prior to sentencing.

7         Do you understand that?

8         THE DEFENDANT:  Yes.

9         THE COURT:  And that you will also

10   sign the corporate resolutions for the

11   above mentioned corporations to a plea

12   prior to sentencing so that the

13   corporations can enter pleas; and last,

14   that you will not engage in any employment

15   related to the insurance industry, _____

16   including No-Fault Insurance, personal

17   injury or health insurance during these

18   five years.

19        Do you understand that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Now, do you also

22   understand, do you also understand that

23   when you plead guilty you give up certain

24   rights, that have to be noted on the

25   record?

TM

20

1                              Plea

2          Those include the right to a jury

3     trial.  Because of the nature of the

4     crimes you are entitled to a jury trial in

5     this case.  And that the only way you can

6     give up those rights is to knowingly waive

7     it by pleading guilty.

8          But, associated with the jury trial is

9     the right to have the DA put to the burden

10    of proving your guilt beyond a reasonable

11    doubt to a jury that you and your attorney

12    help select.

13         When you plead guilty you give up the

14    right to see and hear all the witnesses

15    that are accusing you of these crimes; you

16    give up the right to have the DAs put to

17    the burden of proving your guilt beyond a

18    reasonable doubt; and you give up the

19    right to have the jury be the one to make

20    the ultimate decision.

21         Do you understand you are giving that

22    up?

23         THE DEFENDANT:  Yes.

24         THE COURT:  At a jury trial you, too,

25    could testify.  You don't have to, you

                              TM

22

Plea

2    guilty?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Listen to the question.

5            THE DEFENDANT:  No.

6            THE COURT:  All right.

7        Are you doing so of your own free

8    will?

9            THE DEFENDANT:  I understand.

10           MR. RUCK:  Are you doing this --

11           THE COURT:  Are you doing it of your

12   own volition?

13           THE DEFENDANT:  Yes.

14           THE COURT:  All right.

15       All right.  Mr. Ruck, you believe that

16   she is going to be able to pay this

17   restitution over five years?

18           MR. RUCK:  Yes, your Honor.

19           THE COURT:  Listen to the clerk of the

20   court as the plea is recorded.

21       Sentence date will be approximately

22   six to eight weeks from today.

23           MR. RUCK:  Your Honor, may I just

24   clarify a matter, and I think it was made

25   part of the record when you first

TM

1                        Plea

2    addressed it, but I have my checklist, it

3    is understood and agreed that the pleas

4    offered to your Honor are in full

5    satisfaction of the entire indictment and

6    all the matters known to the District

7    Attorney's Office that exist in their

8    investigative files with respect to my

9    client as of this point in time.

10           MS. SEELY:  That's correct, your

11   Honor.

12           THE COURT:  All right.

13           Listen to the clerk of the court.

14           THE CLERK:  Miss Tatiana Rybuk, is

15   that your true name?

16           THE DEFENDANT:  Yes.

17           THE CLERK:  And Mr. Ruck, who stands

18   beside you, is your attorney?

19           THE DEFENDANT:  Yes.

20           THE CLERK:  Before accepting your plea

21   of guilty you are advised that if you have

22   previously been convicted of a predicate

23   felony, as defined in Article 70 of the

24   Penal Law, that fact may be established

25   after your plea of guilty in this action

                         TM

1                           Plea

2      now before this court and you may be

3      subject to different or additional

4      punishment.

5          Miss Rybuk, do you now wish to

6      withdraw your pleas of not guilty entered

7      under Indictment 4270 of 1999 and do you

8      now wish to plead guilty to the crimes of

9      Attempted Enterprise Corruption, Class C

10     Felony, as well as Scheme to Defraud in

11     the First Degree, a Class E Felony, and

12     twelve counts of Insurance Fraud in the

13     Fifth Degree, all Class A Misdemeanors, to

14     cover this indictment; is that what you

15     wish to do?

16             THE DEFENDANT:  Yes.

17             THE CLERK:  You are also advised on

18     the date of sentencing a mandatory

19     surcharge of $150.00, a crime victim's

20     assistance fee of $5.00 may be imposed

21     pursuant to 60.35 of the Penal Law.

22             Are you a U.S. citizen, Ms. Rybuk?

23             THE DEFENDANT:  Not a citizen.

24             THE CLERK:  Not a citizen.

25             You are further advised that if you

                          TM

25

1                          Plea

2       are not a U.S. citizen your immigration

3       status may be jeopardized and you may be

4       deported at any time prior to the

5       expiration of your sentence.

6            Also, if you become subject to a final

7       order of deportation you may be paroled to

8       the immigration authorities for

9       deportation at any time subsequent to the

10      commencement of an indeterminate prison

11      sentence.

12           Prison sentence is not an issue.

13           Sentence date, 12/13?

14           THE COURT:  Do you want the same

15      date?

16           MS. SEELY:  I think another date would

17      be better.

18           THE COURT:  All right.

19           Date approximately around 12/13 you

20      would like to do this, 14th, 15th, 16th,

21      17th?

22           MS. BURACH:  The 14th is fine.

23           MS. SEELY:  Whatever is good for

24      Mr. Ruck.

25           MR. RUCK:  December 14th is fine, your

                          TM

26

1                           Plea

2      Honor.

3              THE COURT:  All right, 12/14.

4          Now you are going to have to report to

5      probation.  Make sure you speak to

6      probation because I need a report in order

7      to sentence you.

8              THE CLERK:  Bail continued?

9              THE COURT:  Bail continued.

10             MS. BURACH:  Your Honor, one last

11     thing, I believe you might have said this

12     but I didn't hear that, that if Miss Rybuk

13     violates any of the conditions of

14     probation she will be subject to the

15     minimum jail sentence of one to three

16     years.

17             THE COURT:  That is correct.

18             MS. BURACH:  Thank you.

19             THE COURT:  Anything else?

20             MS. BURACH:  That's it.

21             MR. RUCK:  While I am here and while

22     we are on the record, I am reminded all

23     the terms of the agreement need to be on

24     the record.

25             The District Attorney's Office has

                            TM

27

1                        Plea

2       promised that if I called upon them or

3       anyone else on Miss Rybuk's behalf that

4       they will confirm that she has provided

5       substantial information and substantial

6       cooperation to the District Attorney's

7       Office, correct?

8          MS. SEELY:   That's correct,

9       Jay Shapiro of the Rackets Division had

10      made that representation to Mr. Ruck that

11      we will provide a letter stating that

12      there was substantial information

13      provided.

14          THE COURT:   All right.

15          *     *     *     *     *

16          Certified that the foregoing is
            a true and accurate transcript
17          of the original stenographic
            minutes in this case.

18

19          _____
            Teresa McGrath
            Official Court Reporter

20

21

22

23

24

25

                         TM.